GEORGE H. CARLETON & others *vs.* MARY F. RUGG
& others.

Essex.　November 10, 1888. — September 3, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Intoxicating Liquors — Common Nuisance — Equity Jurisdiction to enjoin —
Constitutional Law — Evidence — Name — Preliminary Injunction.*

The St. of 1887, c. 380, § 1, conferring jurisdiction in equity to restrain or abate by injunction as a common nuisance any building, place, or tenement resorted to for prostitution, lewdness, or illegal gaming, or used for the illegal keeping or sale of intoxicating liquors, upon an information by a district attorney or upon the petition of not less than ten legal voters of the town or city where it is situated, is constitutional. FIELD, DEVENS, & W. ALLEN, JJ., dissenting.

A petition on that statute, purporting to be signed by ten legal voters of a city, bore among others the signature " A. M. Allen," and at the hearing thereon evidence was admitted that Augustine M. Allen, a legal voter of that city, signed the petition by that name. *Held*, that the petition was sufficiently signed, and that the evidence was properly admitted.

On such a petition the respondent, for the purposes of the hearing, admitted the allegations of the petition which followed the statute to be true, and the judge who heard the case granted a preliminary injunction. *Held*, that the issue of such an injunction was within the discretion of the judge.

PETITION, under the St. of 1887, c. 380, to the Superior Court, filed September 6, 1888, purporting to be signed by ten "legal voters in the city of Haverhill," and alleging "that a certain tenement in a building at the corner of Locust and Essex Streets in said Haverhill, which tenement is bounded as follows, southerly by Essex Street, easterly and northerly by land of Mary F. Rugg and others, and westerly by Locust Street, is used for the illegal keeping and sale of intoxicating liquors to the common nuisance of all good citizens; that the occupant of said tenement is John E. King; that the owners of said building are Mary F. Rugg, Mary E. Rugg, Ella A. Chesley, and Willie E. Rugg, all of Haverhill, in the county of Essex. Wherefore your petitioners pray that your Honors will restrain, enjoin, and abate said tenement as a common nuisance, and restrain and enjoin said owners, and occupant, their servants and agents, from continuing or permitting the continuance of said illegal keeping and sale of intoxicating liquors in said building."

At the hearing before *Lathrop*, J., the respondents contended that the petition was not properly signed, or signed by ten legal voters of Haverhill, as required by the statute, but, for the purposes of the hearing, admitted that the other allegations of the petition were true. The petition was signed by nine legal voters of the city of Haverhill, the tenth signature being as follows: "A. M. Allen." The petitioners admitted that the name "A. M. Allen" did not appear upon the official list of qualified voters, or upon the register of voters kept by the registrars of the city of Haverhill, but they offered to prove that Augustine M. Allen, a legal voter of Haverhill, was the person who signed the petition by the name "A. M. Allen." The respondents objected to the admission of this evidence, and requested the judge to rule that the same was incompetent, and that evidence other than the official list of qualified voters, or the register of voters kept by the registrars of Haverhill, could not be offered to show that "A. M. Allen" was a legal voter

of Haverhill. But the judge ruled that the evidence was admissible, and thereupon the respondents, for the purposes of the hearing, admitted that Augustine M. Allen was a legal voter of Haverhill, and that he was the person who signed the petition by the signature "A. M. Allen."

There was no evidence or claim on the part of the petitioners that the petitioners or any one of them would suffer any damage or injury by the continuance of the alleged nuisance beyond that common to all law-abiding citizens. Whereupon the respondents objected that this cause did not come within the class of equity cases which, in the exercise of a sound discretion, call for a preliminary injunction, and requested the judge to refuse such an injunction. An interlocutory decree ordering a preliminary injunction was, however, made.

The respondents requested a ruling that the St. of 1887, c. 380, was unconstitutional, but the judge ruled that the statute was constitutional, and, being of the opinion that the interlocutory decree so affected the merits of the controversy that the matter ought to be determined by this court before further proceedings were had, ordered a stay of all further proceedings, and reported for the determination of this court the following questions:

"First. Whether chapter 380 of the acts of 1887 is constitutional?

"Second. Whether, upon the facts stated in this report, the petition was signed as required by that chapter?

"Third. Whether, upon the facts stated in this report, it was within the power of the justice of this court, in the exercise of his discretion, to order a preliminary injunction?"

*W. H. Moody*, for the petitioners.

*E. B. Fuller*, for the respondents.

KNOWLTON, J. The St. of 1887, c. 380, § 1, is as follows: "The Supreme Judicial Court and Superior Court shall have jurisdiction in equity upon information filed by the district attorney for the district, or upon the petition of not less than ten legal voters of any town or city, setting forth the fact that any building, place, or tenement therein is resorted to for prostitution, lewdness, or illegal gaming, or is used for the illegal keeping or sale of intoxicating liquors, to restrain, enjoin, or abate the same as a common nuisance, and an injunction

for such purpose may be issued by any justice of either of said courts."

The first question reported for our decision is, whether this statute is constitutional. The respondents contend that it is in conflict with Article XII. of the Declaration of Rights, which provides that "no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, . . . but by the judgment of his peers, or the law of the land." The right of the Legislature, in the exercise of the police power of the Commonwealth, to pass laws regulating the sale of intoxicating liquors, or absolutely prohibiting it except for medicinal, mechanical, or chemical purposes, has been repeatedly asserted in able and elaborate opinions of this court and of the Supreme Court of the United States, which cover every question that can fairly be raised under the Constitution of Massachusetts or under that of the United States. *Fisher* v. *McGirr*, 1 Gray, 1. *License Cases*, 5 How. 504. *Bartemeyer* v. *Iowa*, 18 Wall. 129. *Beer Co.* v. *Massachusetts*, 97 U. S. 25. *Mugler* v. *Kansas*, 123 U. S. 623. *Commonwealth* v. *Intoxicating Liquors*, 115 Mass. 153.

We do not understand the respondents to contend that the provisions of the Pub. Sts. c. 100, which regulate the sale of intoxicating liquors, or those of the Pub. Sts. c. 101, § 6, which declare that "all buildings, places, or tenements . . . used for the illegal keeping or sale of intoxicating liquor shall be deemed common nuisances," are unconstitutional. But the argument is, that, by a process in equity for the abatement of an alleged common nuisance of the kind named in this statute, they are liable to be deprived of their property, immunities, and privileges otherwise than by the judgment of their peers or the law of the land.

The fallacy of the argument lies in part in disregarding the distinction between a proceeding to abate a nuisance, which looks only to the property that in the use made of it constitutes the nuisance, and a proceeding to punish an offender for the crime of maintaining a nuisance. These two proceedings are entirely unlike. The latter is conducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by the rules which relate to property, and its only connection with persons is through

property in which they may be interested. That which is declared by a valid statute to be a nuisance, is deemed in law to be a nuisance in fact, and should be dealt with as such. The people, speaking through their representatives, have proclaimed it to be offensive and injurious to the public, and the law will not tolerate it. The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate the nuisance. *Attorney General* v. *Hunter*, 1 Dev. Eq. 12. *People* v. *St. Louis*, 5 Gilman, 351. *Ewell* v. *Greenwood*, 26 Iowa, 377. *Minke* v. *Hopeman*, 87 Ill. 450.

Apart from the method provided for instituting proceedings, the statute under consideration merely says that courts of equity shall have jurisdiction of this kind of public nuisances, as they have of others. It authorizes the making of any reasonable order, or the issue of any proper process, adapted to the abatement or prevention of the nuisance. There can be no doubt of the constitutional right of the Legislature to prescribe the agency to represent the public in setting the law in motion. That may as well be the district attorney of the district, or ten legal voters of the town where the nuisance is alleged to exist, as the Attorney General, if the Legislature so determines. *Littleton* v. *Fritz*, 65 Iowa, 488. *Kansas* v. *Ziebold*, 123 U. S. 623.

It is urged that this statute makes no provision for a trial by jury. This objection applies as well to nearly all our legislation giving jurisdiction in equity. The Pub. Sts. c. 151, § 27, provides for a trial by jury in every case in equity in which that mode of trial is deemed by the court to be desirable. In cases in equity in which defendants have a constitutional right to such a trial, the courts secure it to them. *Powers* v. *Raymond*, 137 Mass. 483.

In the very recent case of *Kansas* v. *Ziebold*, *ubi supra*, the Supreme Court of the United States fully considered all the constitutional questions which arise in the case at bar. In the law of Kansas in relation to nuisances of the kind we are considering is this language : " The attorney general, county attorney, or any citizen of the county where such nuisance exists or is kept or is maintained, may maintain an action in the name of the State to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action,

and no bond shall be required." Comp. Laws Kans. 1885, c. 35, § 13. Then follow provisions for punishing disobedience of an injunction as for a contempt. The defendants were the owners of a brewery which was built before the passage of the statute, and was worth about $10,000 if it could be used for brewing beer, but was of little value for any other use. Under the law, a building so used was a nuisance. A suit in equity was brought under the statute, alleging that the defendant's building was used for manufacturing intoxicating liquor, and praying that it might be abated as a nuisance. The defendants contended that the statute, if enforced, would abridge their privileges and immunities, and deprive them of their property without due process of law, and was in violation of the Fourteenth Amendment of the Constitution of the United States. But, in a very elaborate opinion, the court held otherwise, and sustained the constitutionality of the law in every particular. The statute made no provision for a trial by jury, and it seems that under the Constitution of Kansas parties are entitled to a trial in that mode in all cases in which that had been the method of trial prior to the adoption of the Constitution. The court held that a proceeding in equity to abate a nuisance without such a trial was " due process of law," because it had not been the custom to try such cases to a jury. Similar decisions have been made in Iowa and in Kansas. *Littleton* v. *Fritz*, 65 Iowa, 488. *State* v. *Crawford*, 28 Kans. 726.

In our State, the right to proceed in equity to abate public nuisances, and to destroy private property in the exercise of the police power, when necessary for the protection of the public, has been recognized in many cases. *District Attorney* v. *Lynn & Boston Railroad*, 16 Gray, 242. *Belcher* v. *Farrar*, 8 Allen, 325. *Winthrop* v. *Farrar*, 11 Allen, 398. *Attorney General* v. *Tudor Ice Co.* 104 Mass. 239. *Watertown* v. *Mayo*, 109 Mass. 315. *Bancroft* v. *Cambridge*, 126 Mass. 438. We are of opinion that the statute is constitutional.

It was competent for the petitioners to show that the person who signed the petition by the name " A. M. Allen " was Augustine M. Allen, who was a legal voter in the city of Haverhill. *Commonwealth* v. *Hamilton*, 15 Gray, 480.

The third question relates to the power of the justice, in the

exercise of his discretion, to order a preliminary injunction. The principles by which the court should be governed, in dealing with an application for a preliminary injunction under this statute, are the same as apply to proceedings to enjoin other kinds of public nuisances. The ten legal voters who unite in a petition represent the public, as does the Attorney General in other similar cases. The fact that no one of them in the present case would suffer any damage by the continuance of the nuisance beyond that common to all law-abiding citizens, was immaterial.

In all suits in equity, before a case can be regularly heard upon its merits, the defendant must have the reasonable time prescribed by the rule in which to answer; issues whether of law or of fact must be made up, and an opportunity given to prepare for the hearing. An application for a preliminary injunction rests upon the alleged existence of an emergency, or of a special reason for an order before the case can be regularly heard. It is only to prevent serious injury, for which there is no other complete and adequate remedy, that a court is justified in interfering with the conduct of persons or the use of property before trial. Properly to determine what shall be done in cases of this kind involves an exercise of sound discretion by the presiding judge, who should look to the interests of the petitioners, and of the public whom they represent, and should at the same time remember that without good reason a respondent is not to be dealt with *ex parte*, nor forced to trial before the case is ripe for hearing. It should be borne in mind, that this is not a statute which professes to look to the conduct of persons to prevent the commission of crime. If it were, it would have no legitimate place in our jurisprudence. There is no doubt that in hearings upon applications for preliminary injunctions and orders *pendente lite* in suits in equity, and in proceedings for the punishment of contempt of court, the parties have no constitutional right to a trial by jury. It would be an anomalous proceeding for a court to enjoin a defendant from committing the crime of larceny, or of selling intoxicating liquors, with a view to punish as disobedience of the injunction and contempt of court the same act which was before punishable as a crime. If that could be done, an accused person through a mere change of form in the proceedings might

be punished for a crime without a trial by jury, and in violation of both the Federal and State Constitutions. There would be strong ground for contending that a statute which should attempt to authorize such a method of preventing or punishing ordinary crimes would be unconstitutional. Indeed, even where a plaintiff seeks the aid of a court of equity to protect him from irreparable injury through the threatened publication of a libel, or the commission of some other like crime, the courts decline to interfere. *Brandreth* v. *Lance*, 8 Paige, 24. *Fleming* v. *Newton*, 1 H. L. Cas. 363, 376. *Boston Diatite Co.* v. *Florence Manuf. Co.* 114 Mass. 69.

In proceeding under this statute, — not for the purpose of forbidding by order a personal act which the law forbids under the penalty of fine and imprisonment, but for the purpose of protecting the community from a harmful use of property, — courts in determining whether to issue a preliminary injunction should look to the nature of the building or tenement, and the use to which it is being put, and is likely to be put, to see whether the continuance of it will be seriously detrimental to the community, before the rights of the parties can be finally determined. We can imagine a case in which a tenement might be alleged to be a nuisance by reason of its use for the unlawful sale of intoxicating liquors for medicinal purposes. Under the rules of practice in equity, it can hardly be contended that the court would be called upon to issue an injunction in such a case, until the existence of the nuisance had been established at the final hearing. On the other hand, we can imagine a case in which a tenement, used for the illegal sale of intoxicating liquors, might be so situated and so kept that every day's continuance of it would inflict serious injury upon the people in its vicinity. In such a suit a court might well take measures to abate the nuisance upon a preliminary hearing.

In the case at bar, the respondents, for the purposes of the hearing, admitted that the allegations of the petition were true. By this admission, the principal reason for not granting an injunction before the final hearing was eliminated from the case. Usually there is a question of fact in dispute, of a kind which, at the request of either party, is commonly submitted to a jury. Indeed, it can be argued with much force, but whether effectu-

ally it is unnecessary now to decide, that upon this question as to the use made of the property the parties at the hearing upon the merits have a constitutional right to a trial by jury. See *Merchants' National Bank* v. *Moulton*, 143 Mass. 543. The respondents having conceded facts which, if proved at the final hearing, will require a decree in favor of the petitioners, it was within the power of the presiding judge, in the exercise of his discretion, to order a preliminary injunction.

*Injunction to issue.*

FIELD, J. In considering the constitutionality of the St. of 1887, c. 380, it is first necessary to determine its meaning, because a statute must be carried into effect, if at all, according to the intention of the Legislature, as expressed in it. *Fisher* v. *McGirr*, 1 Gray, 1, 22.

The present case raises the question of the constitutionality of the St. of 1887, c. 380, only so far as it relates to the use of a building, place, or tenement for the illegal keeping or illegal sale of intoxicating liquors. The statute plainly provides for a public prosecution, to be instituted either by a district attorney or by ten or more legal voters, for the purpose of preventing a violation of the statutes regulating the sale of intoxicating liquors. The statute was not enacted for the protection of private rights. In proceedings under it, it is immaterial whether the use makes the building, place, or tenement dangerous or offensive to the neighbors or to the inhabitants generally. The keeping or sale of intoxicating liquors may be so secret as to be unknown to them, or they may desire that intoxicating liquors be kept or sold there; yet these facts would not be a defence, because the statute is enacted for the purpose of enforcing the public policy of the Commonwealth in regard to the keeping and sale of intoxicating liquors. The sale, or keeping for sale, of intoxicating liquors, in violation of law, may be detrimental to a community, but the place where they are sold or kept is not thereby commonly rendered physically dangerous to the health or safety, or offensive to the senses, of the persons who dwell near it, and the statute applies to any keeping of intoxicating liquors in any particular building, place, or tenement, with the intention of illegally selling them anywhere within the Commonwealth. *Commonwealth* v. *Gillon*, 148 Mass. 15.

The jurisdiction given by the statute is jurisdiction in equity; the only fact required to be alleged in the information is that the building, place, or tenement described " is used for the illegal keeping or sale of intoxicating liquors "; the only remedy given is " to restrain, enjoin, or abate the same as a common nuisance," and the only process provided is that " an injunction for such purpose may be issued by any justice of either " the Supreme Judicial Court or the Superior Court.   There is no provision for the destruction or the forfeiture of the building, place, or tenement, or of any other property, or for shutting up the building or tenement, or for excluding any person from the possession; and it can hardly be contended that any process under this statute could be issued for destroying a building or tenement, or for changing the title or physical condition of a building, place, or tenement.   Buildings, places, and tenements used for the purposes described in this statute have for many years been declared to be common nuisances by other provisions of statute, and it has never been considered that they could be destroyed, or that their physical condition could be changed, except in cases falling within the express authority given by § 10 of chapter 101 of the Public Statutes.   Pub. Sts. c. 101, §§ 6–9.

The injunction issued in this case, and probably the only one that could have been issued, is one enjoining the respondents from using, or permitting to be used, the building, place, or tenement for the illegal keeping or sale of intoxicating liquors. The Public Statutes prohibit such a use as a crime, and the only effect of the injunction is to subject the respondents to the process used for punishing persons guilty of violating injunctions, in addition to or in substitution for criminal process.   The Legislature apparently thought that a remedy in equity would be more speedy, or more certain, or more efficient, than that by complaint or indictment.   The issuing of the injunction of itself adds nothing to the prohibition of the statutes, but the intention plainly is to call into use the peculiar process employed by courts of equity in punishing persons guilty of wilful violations of injunctions.   The efficacy of the statute, apart from the fact that the prosecution may be beyond the control of the district attorney, depends wholly upon the proceedings that may be

taken for punishing violations of injunctions. There can be no decree for damages, or for a penalty, or directly affecting the title or condition of property. It is not contended that the statute was intended to secure to a respondent a trial by jury in a hearing upon a charge that he had violated an injunction issued by the court, and it is the well known practice of courts of equity to hear and determine such a charge without a jury. If the proceedings under the statute are to follow the analogy of bills in equity brought to enjoin the creation or continuance of a private nuisance, it must have been the intention of the Legislature that it should be within the power of a justice of either of the courts mentioned to issue an interlocutory injunction, and to punish the respondent if he violated it, and it is well known that courts of equity do not try applications for an interlocutory injunction with the aid of a jury.

Indeed, there are many indications that the principal reason why the statute was passed was to avoid a trial by jury, and if the information is not regarded as essentially a criminal prosecution, it is difficult to see how the respondent is entitled as of right to a trial by jury at any stage of the proceedings, unless the suit is considered as involving a controversy concerning property within the meaning of Article XV. of the Declaration of Rights. But as no decree can be entered which directly affects property, it may be doubted whether it can be considered as involving such a controversy, and the proceeding was not intended for the vindication of private rights of property, whether belonging to one or to many persons. The fact that a court may grant a trial by jury upon the issue whether the building, place, or tenement was used by the respondent, at the time the information was filed, for the illegal keeping or sale of intoxicating liquors, does not remove the difficulty; for a finding upon this question is not followed by any decree which directly affects the person of the defendant or the condition of the property. A finding upon this question is a preliminary to the issuing of a perpetual injunction, and the punishment is imposed when the respondent has been found guilty of violating the injunction. Property is often forfeited as a punishment for crime, and suits instituted for that purpose are regarded as criminal or penal. Property is sometimes destroyed or its character changed

because its nature or condition is such as to make it dangerous or offensive to the community, and suits for the destruction of such property, or for changing its character, are not necessarily either criminal or penal. I think there is no doubt that, if the proceedings under this statute are intended to prevent the repeated commission of a criminal act by the punishment, or the threatened punishment, of a person charged with having committed it, the procedure provided by the statute is inconsistent with Article XII. of the Declaration of Rights. *Fisher* v. *McGirr*, 1 Gray, 1, 22, 26. *Sullivan* v. *Adams*, 3 Gray, 476. *Jones* v. *Robbins*, 8 Gray, 329. *Brown* v. *Perkins*, 12 Gray, 89. *Nolan's case*, 122 Mass. 330. *Commonwealth* v. *Horregan*, 127 Mass. 450.

The case most relied on by the petitioners is *Kansas* v. *Ziebold*, reported with the two cases of *Mugler* v. *Kansas*, in 123 U. S. 623. The question there considered was whether § 13 of chapter 128 of the St. of Kansas of 1881, as amended by the St. of Kansas of 1885, c. 149, § 13, approved on March 7, 1885, (Comp. Laws Kans. 1885, c. 35, § 13,) was in violation of the Fourteenth Amendment of the Constitution of the United States. See *State* v. *Crawford*, 28 Kans. 726, 743; *Schmidt* v. *Cobb*, 119 U. S. 286; *Kidd* v. *Pearson*, 128 U. S. 1. That section, as amended, declared that every place where intoxicating liquors were sold, manufactured, etc., in violation of the act, was a common nuisance, and it authorized the attorney general, county attorney, or any citizen to maintain an action in the name of the State; and it provided that if, by the judgment of any court having jurisdiction, such place was found to be a nuisance, the sheriff, etc. "shall be directed to shut up and abate such place by taking possession thereof and destroying all intoxicating liquors found therein, together with all signs, screens, bars, bottles, glasses, and other property used in keeping and maintaining said nuisance," and that an injunction might issue at the commencement of the action without giving a bond, and that any person violating the terms of any injunction granted in such a proceeding should be punished as for contempt, by a fine, or imprisonment, or both. The people of Kansas, in November, 1880, had adopted an amendment to their Constitution prohibiting the manufacture and sale of intoxicating liquors except for medical, scientific, and mechanical purposes. The question

was not much considered in that case, if it w considered at all, whether that statute was consistent with the Constitution of Kansas; and the decision in effect is that the proceedings authorized by it were not inconsistent with the Fourteenth Amendment of the Constitution of the United States.

In the cases of *Mugler* v. *Kansas, ubi supra,* there were writs of error to the Supreme Court of the State of Kansas, and the Supreme Court of the United States was necessarily confined to the Federal questions involved in the suits. *Kansas* v. *Ziebold* was an information against Ziebold and his copartner, brought in the State court, and it was removed to the Circuit Court of the United States by the defendants, on what ground does not appear. That court dismissed the information on hearing, and the State of Kansas appealed to the Supreme Court of the United States. In that case it was perhaps competent for the Supreme Court of the United States to decide whether the statute of the State of Kansas was consistent with the Constitution of that State; but in deciding this, it would follow the decision of the Supreme Court of that State, if that court had decided it. It does not appear that the precise question involved in that case had been decided by the Supreme Court of Kansas, but the opinion of the Supreme Court of the United States cannot be considered as a careful determination of the question of the conformity of the statute with the Constitution of that State. See *Baldwin* v. *Kansas,* 129 U. S. 52; *Spencer* v. *Merchant,* 125 U. S. 345; *Bucher* v. *Cheshire Railroad,* 125 U. S. 555, 583; *Barbier* v. *Connolly,* 113 U. S. 27; *Schmidt* v. *Cobb,* 119 U. S. 286; *State* v. *Whisner,* 35 Kans. 271.

The phrase " due process of law," contained in the Fourteenth Amendment of the Constitution of the United States, has not been construed to mean that parties shall be entitled to a jury trial in civil suits at common law, or that a person shall be tried for a felony or a capital crime only on presentment of a grand jury, and it is doubtful, even, if it would be held that the amendment secures a trial by jury in criminal cases. The clause of that amendment we are considering is a restraint on all the States of the United States, and the Supreme Court of the United States has taken notice that there are considerable diversities in the jurisprudence of the different States. That court

says, in *Walker* v. *Sauvinet*, 92 U. S. 90, 93 : " This requirement of the Constitution is met if the trial is had according to the settled course of judicial proceedings. . . . Due process of law is process due according to the law of the land. This process in the States is regulated by the law of the State." In *Missouri* v. *Lewis*, 101 U. S. 22, 31, that court says : " Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding." In *Dent* v. *West Virginia*, 129 U. S. 114, 124, that court says : " It is suffi-cient, for the purposes of this case, to say that legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the sub-jects to which it relates, and is enforceable in the usual modes established in the administration of government with respect to kindred matters; that is, by process or proceedings adapted to the nature of the case. The great purpose of the requirement is to exclude everything that is arbitrary and capricious in legislation affecting the rights of the citizen." Apparently any mode of procedure duly established by a State, which provides for an impartial trial, and does not violate the fundamental prin-ciples of general jurisprudence, would be due process of law within the meaning of that amendment. A different construc-tion has been given by this court to the phrase " the law of the land," contained in Article XII. of our Declaration of Rights, and *Kansas* v. *Ziebold* is not an authority upon the meaning of our Constitution. See *Hurtado* v. *People*, 110 U. S. 516 ; *Jones* v. *Robbins*, and other Massachusetts cases cited *ubi supra*. It will hardly be contended that intoxicating liquors can be destroyed in this Commonwealth because they are kept for sale in violation of law, unless this fact has been found by a jury. *Fisher* v. *McGirr*, 1 Gray, 1. *Brown* v. *Perkins*, 12 Gray, 89. See *Ely* v. *Supervisors*, 36 N. Y. 297 ; *Gray* v. *Ayres*, 7 Dana, 375; *Welch* v. *Stowell*, 2 Doug. (Mich.) 332; *Rex* v. *Pappineau*, Strange, 686.

In *Kansas* v. *Ziebold, ubi supra*, and in *Littleton* v. *Fritz*, 65 Iowa, 488, a good deal of reliance was placed upon the jurisdic-tion of courts of equity over informations filed by the Attorney

General to enjoin public nuisances, and it is said that this juris-
diction extends not only to purprestures, but also to public
nuisances, strictly so called. In *Littleton* v. *Fritz*, it was con-
ceded, for the purposes of the decision, that at the time of the
adoption of the Constitution of Iowa courts of equity declined
to entertain suits to restrain and abate public nuisances in cases
where rights of property were not involved. In *Missouri* v.
*Uhrig*, 14 Mo. App. 413, this jurisdiction was examined, and
the court says that it had been exercised only in three classes
of cases: first, "to restrain purprestures of public highways or
navigations"; secondly, "to restrain threatened nuisances dan-
gerous to the health of a whole community"; thirdly, "to re-
strain *ultra vires* acts of corporations injurious to public right";
and that "the exercise of equity jurisdiction in these three
classes of cases is an exception to a very general, well under-
stood, and important rule, . . . that a court of equity has no
jurisdiction in matters of crime."

In *Attorney General* v. *Tudor Ice Co.* 104 Mass. 239, this
court says, that sitting in equity it "does not administer pun-
ishment or enforce forfeitures for transgressions of law; but its
jurisdiction is limited to the protection of civil rights, and to
cases in which full and adequate relief cannot be had on the
common law side of this court or of the other courts of the
Commonwealth." The court also says that "the only cases in
which informations in equity in the name of the Attorney Gen-
eral have been sustained by this court are of two classes. The
one is of public nuisances, which affect or endanger the public
safety or convenience, and require immediate judicial interposi-
tion, like obstructions of highways or navigable waters. . . .
The other is of trusts for charitable purposes," etc. See *Attor-
ney General* v. *Jamaica Pond Aqueduct*, 133 Mass. 361; *Attorney
General* v. *Consumers' Gas Co.* 142 Mass. 417. No case has been
cited where, under the general jurisdiction of a court of equity,
an injunction has been granted in behalf of the public to re-
strain a person from selling intoxicating liquors, or from keeping
them for sale in violation of statutes, or from doing similar acts
which have been prohibited on general considerations of public
policy. So far as appears, courts acting under their general
equity powers have refused to entertain suits brought for this

purpose. *Missouri* v. *Uhrig*, 14 Mo. App. 413.  *State* v. *Crawford*, 28 Kans. 726.

The Massachusetts Statute of 1887, c. 380, was not passed for the abatement of a nuisance by destroying or changing the character or condition of tangible property, or by removing obstructions to the exercise of a public right. Its purpose was, I think, to prevent the illegal sale of intoxicating liquors by punishing by fine or imprisonment, or by both, without limit, in the discretion of the court, any person who sells or keeps such liquors for sale after he has been enjoined by the court. The prevention of crime by the punishment of persons found guilty of an offence against a general law is the end aimed at. The keeping or selling of intoxicating liquors without a license was a well known offence when our Constitution was adopted, and the procedure for punishing it, or for forfeiting the liquors, was also well known. Articles XII. and XV. were inserted in the Declaration of Rights as a protection to every individual in his life, liberty, and property. If a statute had given jurisdiction in equity to hear without a jury an information like this, and had authorized the court, on finding the respondent guilty, to punish him in its discretion, without limit, by fine, or imprisonment, or both, in what substantial respect would such a statute differ from this? The Legislature cannot do indirectly what it cannot do directly ; it cannot change the nature of things by affixing to them new names. If the Legislature, by statute, can authorize a court in a public prosecution to enjoin any person from illegally keeping or selling intoxicating liquors in any specified place within the Commonwealth, why cannot it authorize a court to enjoin any person from illegally keeping or selling intoxicating liquors anywhere within the Commonwealth? and, if this can be done, why can it not authorize a court at the suit of the Commonwealth to enjoin any person from doing any illegal or criminal act anywhere within the Commonwealth, and to try without a jury any person so enjoined, on a charge of having violated the injunction, and to punish him by fine and imprisonment, without limit, if the court find him guilty?

Except for constitutional limitations, the Legislature could deal with all crimes by way of injunctions in equity. Indeed, if this jurisdiction were confined to crimes having some direct

relation to a particular building, place, or tenement, the number of such crimes is large, and all crimes have some relation to place, as they must be committed somewhere. The harboring or concealing of criminals; the receiving or concealing of stolen or embezzled property; the making or keeping of instruments intended for criminal use; the violation of the provisions of criminal statutes regulating trade; burglary, arson, and other similar offences, — have a direct relation to a particular building, place, or tenement, and the building, place, or tenement in which these offences are committed may be said to be used for the purpose. In the prosecution of crimes by way of injunctions in equity, the existing statute of limitations would not be a defence, and the whole course of criminal procedure would be changed. It was not the intention of the Constitution that persons should be punished for violating general laws by proceedings in equity, or by a court acting without a jury, and subject to no limitations upon its power to fine and imprison except its own discretion. The safeguards of the common law were carefully secured by the Declaration of Rights, both in public prosecutions and in private suits, "except in cases in which it has heretofore been otherways used and practised." This is not such a case, and the only thing novel about it is the procedure. Statutes against illegally selling or keeping for sale intoxicating liquors, from the earliest times, have been enforced by criminal complaints or indictments, or by penal actions. Such statutes were never enforced in equity anywhere when the Constitution was adopted. I think that the statute under which the present proceedings were brought is inconsistent with Article XII. of the Declaration of Rights.

Mr. Justice Devens and Mr. Justice William Allen concur in this dissent.