# WHEELING.

HARTLEY *v.* HENRETTA.

LUTES *v.* RILEY.

STIDGER *v.* KEILEY.

DICK *v.* KULL.

Submitted June 4, 1891.—Decided June 15, 1891.

INTOXICATING LIQUORS—NUISANCE—ABATEMENT—INJUNCTION.

Under section 18 of chapter 32 of the Code, a court of equity can not restrain by injunction a party charged with selling intoxicating liquors contrary to law, or abate the house, building, or place where such intoxicating liquors are alleged to be sold contrary to law, until the owner or keeper of such house or place has been convicted of such unlawful selling at the place named in the bill.

*(A Divided Court.)*

*J. B. McClure* and *J. J. Jacob* for appellants, cited Code c. 32, ss. 18, 19; 27 W. Va. 276; High Inj. §§ 4–9, 20, 23; 2 Johns. 371; 54 Pa. St. 401; 5 C. E. Greene 296; 11 Md. 128; 14 Mo. App. 413; 2 Minn. 61; 99 Ill. 489; 3 Rand 73; 2 Tuck. Comm. 470; 1 Hop. Ch'y Rep. 354; 23 Wis. 343; 1 Cr. (U. S.) 137; 16 Pa. St. 266; Coo. Const. Lim. (2d Ed.) 90, 91; Id. 144–150; 132 Ill. 348; Wood Nuis. § 740; 1 Dill. Mun. Corp. (3d Ed.) § 374; 64 Miss. 483, 486; 39 N. Y. 122; 33 W. Va. 185; Const. Art. VI Sec. 30; 8 W. Va. 74; Id. 612; 10 Am. & Eng. Ency. 786; 54 Pa. St. 401; 28 Kan. 726; 25 W. Va. 512, 514 *et seq*; 19 How. 271; 2 Black (U. S.) 551; 42 Wis. 608; 1 High Inj. § 761; 65 Ia.

488; 16 Gray 242; 2 Gr. Ch'y 139; 2 Myl. & Cr. 123; 104 Mass. 239; 20 N. J. Eq. 296; Id. 435; 26 W. Va. 493; 23 Gratt. 799; 24 W. Va. 89; Code, c. 133, s. 6.

*J. A. Ewing, D. B. Evans, J. H. Holt* and *T. J. Parsons* for appellees, cited Code, c. 32, ss. 18, 19; 2 Sto. Eq. §§ 921, 922; 65 Ia. 488; 149 Mass. 550; 123 U. S. 623; 100 Pa. St. 182; 34 Wis. 450; 5 Gil. 351; Amb. 158; 3 Atk. 750; 4 Paige 510; 5 Ves. 129; 22 Wis. 600; 1 Y. & C. Ch'y 417; 3 Ired. Eq. 302; 2 Dev. Eq. 38; 14 Atl. Rep. 137; 28 N. Y. 396; 16 Gray 245; 3 N. J. Eq. 139; 5 Port. 279, 294; 22 Ala. 194; 1 Dev. Eq. B.; 2 Myl. & Cr. 129, 133; Dr. & Sm. 161; Eden Inj. 259; Kerr Inj. (2d Ed.) 168; Const. Art. VII, Sec. 12; 65 Ia. 488; 66 Ia. 67; 149 Mass. 550; 134 U. S. 31, 40; 74 Ia. 699; 78 Va. 375; 28 N. Y. 396; Wood Nuis. 996; 29 Conn. 479; 27 Vt. 328; 107 Mass. 396; 33 Me. 564; 4 Greene (Ia.) 172; 69 Ill. 595; Wood Nuis. (2d Ed.) §§ 24, 25; 6 B. Mon. 21; 21 N. H. 343; 6 Ind. 444; 45 Ia. 516; Code, c. 145, s. 27; 128 U. S. 1; 101 N. Y. 634; 29 Fed. Rep. 196; 26 Fed. Rep. 289; 23 Tex. Appr. 77; 30 Fed. Rep. 51; 78 Ga. 668; 39 N. W. Rep. 171; Code, c. 13, s. 17; 29 W. Va. 48; 11 Am. & Eng. Ency. 723, 724, (N. 2), 724, 725; 7 S. E. Rep. 811.

ENGLISH, JUDGE :

On the 12th day of December, 1890, D. J. Hartley, R. S. McConnell, S. A. Walton, T. D. Cheadle, Thomas Gatts, and W. L. Edwards, citizens of the county of Marshall, who sued in their own behalf and in behalf of all other citizens of the State of West Virginia, presented a bill to the judge of the Circuit Court of Marshall county in which they alleged that Patrick Henretta was the owner in fee of a certain lot or parcel of ground on which stands a certain house known as the " Henretta Hotel," fronting on the south side of Tenth street, between Thompson avenue and the Ohio River Railroad track, in the Second ward of the city of Moundsville, Marshall county, and State aforesaid, and filed with said bill a copy of his deed as an exhibit.

They further alleged that in said house on said lot or parcel of land intoxicating liquors—whisky, wine, porter,

ale, beer, and drinks of like nature—for a long time had been sold and vended by John Henretta, contrary to law, and without a state license therefor, to the great and irreparable injury of the plaintiffs and all other citizens of the state; and that said John Henretta had been selling and vending said liquors in said house contrary to law, and without state license therefor, for a long space of time, to wit, since the 1st day of May, 1890; so that by reason of said intoxicating liquors being sold contrary to law, and without a state license therefor, in said house, the said house had become and was a common and public nuisance; and they charge the truth to be that the said Patrick Henretta had been for a long time, and was then, knowingly permitting the said John Henretta to sell and vend in said house said intoxicating liquors contrary to law, and without a state license therefor, and had so permitted him (the said John Henretta) to sell and vend said liquors therein contrary to law, and without a state license therefor, for a long time, to wit, since the 1st day of May, 1890.

They pray that the said John Henretta be enjoined and restrained from either selling or vending intoxicating liquors—whisky, wine, ale, porter, beer, and drinks of like nature—in said house contrary to law, and that said Patrick Henretta be enjoined and restrained from knowingly permitting said liquors to be sold or vended in said house contrary to law, and without a state license therefor, and that said nuisance be abated.

An injunction was granted as prayed for by said judge in vacation, restraining said Patrick Henretta from knowingly permitting intoxicating liquors to be sold and vended contrary to law in the following-named house, to wit, a certain house known as the " Henretta Hotel," fronting on the south side of Tenth street, between Thompson avenue and the Ohio River Railroad track, in the Second ward in the city of Moundsville, W. Va., being the same property conveyed to said Patrick Henretta by Charles Thompson by deed bearing date March 13, 1882, and enjoining and restraining John Henretta from selling and vending intoxicating liquors in said house contrary to law.

On the 25th day of December, 1890, the defendants ap-

peared before said judge in vacation, and moved to dissolve said injection; which motion was overruled and from this ruling said John Henretta applied for and obtained this appeal.

The first error assigned by the appellant is that the judge had no jurisdiction to award the injunction in vacation, because, under section 18 of chapter 32 of the Code, an injunction must be awarded by a court, and not by a judge in vacation. Said section 18 is as follows: "All houses, buildings and places of every description 'where intoxicating liquors are sold or vended contrary to law shall be held, taken and deemed to be common and public nuisances, and may be abated as such upon the conviction of the owner or keeper thereof, as hereinafter provided; and courts of equity shall have jurisdiction by injunction to restrain and abate any such nuisance upon bill filed by any citizen."

Now, while it is true that Circuit Courts in term-time exercise the power of awarding injunctions, yet the power of awarding injunctions is also conferred upon judges in vacation, and injunctions are perhaps more frequently granted in vacation than by the court in term-time; and, when granted in vacation, process is awarded, and the case is regularly matured for a hearing, like any other chancery suit. It is true, a motion to dissolve may be made in vacation before the case reaches the court docket; but this result is caused by the defendant giving notice, and moving to dissolve, before the case is matured. After an injunction has been awarded and process has issued, we must consider that a suit has been instituted in a court of equity, and a court of equity has taken jurisdiction of the matters alleged in the bill, notwithstanding the order of injunction may have been awarded by the judge in vacation, which action of the judge must be regarded as initiatory proceeding incident to the suit. The language of the statute is: "Courts of equity shall have jurisdiction by injunction to restrain and abate any such nuisance upon bill filed by any citizen;" and while we readily concede that a judge in vacation is not a court of equity, yet when he has, upon a bill presented to him in vacation, awarded an injunction, the injunction bond has been executed, and process awarded, the suit must be considered as pending in a court of equity.

Section 6 of chapter 133 of the Code provides that "every judge of a Circuit Court shall have general jurisdiction in awarding injunctions;" and section 4 of the same chapter provides that "jurisdiction of a bill for an injunction to any judgment, act or proceeding shall be in the Circuit Court of the county in which the judgment is rendered, or the act or proceeding is to be done or is doing or is apprehended *etc.;* showing, as I construe the statutes, that whether the injunction is awarded in court or in vacation, it is considered, when awarded, as falling within the jurisdiction of a court of equity, and the subsequent procedure is controlled by the practice and rules prevailing in a court of equity. I therefore conclude that the judge had jurisdiction to award the injunction in vacation, if the bill filed presented such a case as entitled the plaintiffs to the injunction prayed for. We understand the expression used in section 18 of chapter 32, "courts of equity shall have jurisdiction by injunction" *etc.,* as merely conferring equity jurisdiction in restraining or abating the nuisance complained of.

The next assignment of error relied upon is that "an injunction under said section 18 can not be awarded until after the conviction of the party or parties creating the nuisance." This section authorizes any citizen to file a bill to abate what is declared by the section to be a common or public nuisance; and it is contended by counsel for the appellant that conviction of the offence, to wit, selling intoxicating liquors contrary to law at the house or place alleged or designated in the bill, must precede the abatement of such house as a nuisance.

It would hardly be seriously contended that a court of equity could make up an issue and try the question as to the guilt or innocence of the defendant or defendants upon the charge of selling intoxicating liquors at any designated place. Upon a trial of that kind the accused would be entitled to all the presumptions prevailing in criminal cases, or where parties are charged with the violation of a penal statute. If the party charged is found guilty, section 19 provides that he shall be fined not less than twenty dollars nor more than one hundred dollars, and, at the discretion

of the court, imprisoned in the county jail not less than ten nor more than thirty days. This clearly defines and characterizes the offence, and we at once conclude that such an issue can not be determined in a court of equity.

It is, however, contended that any citizen may proceed at once, in the first instance, in a court of equity, to restrain and abate such nuisance. This statute is exceedingly broad in its terms, and in its absence it is clear that no citizen could maintain a bill to abate such a nuisance, in the absence of some peculiar or special injury to themselves. High, Inj. § 762, reads as follows: "No principle of the law of injunctions is more clearly established than that private persons seeking the aid of equity to restrain a public nuisance must show some special injury peculiar to themselves, aside from and independent of the general injury to the public" *etc.* Jurisdiction, however, by this statute, is conferred upon a court of equity to award an injunction at the relation of any citizen. The right to go into a court of equity, then, to abate such a nuisance is conferred upon any citizen by this section of the statute, and we must look to the same statute to ascertain what is necessary to authorize any citizen to abate such nuisance; and we find the statute says that "all houses, buildings, and places of every description where intoxicating liquors are sold or vended contrary to law shall be held, taken and deemed to be common and public nuisances, and may be abated, as such, upon the conviction of the owner or keeper thereof as hereinafter provided."

Under this section, most assuredly no such house or place could be abated without a conviction of the owner or keeper thereof, as thereinafter provided, whether the same was abated by a decree in equity or by a judgment at law, under the nineteenth section. Webster defines "conviction" to be "the act of proving, finding or determining to be guilty of an offence charged against a person before a legal tribunal, as by confession, by the verdict of a jury or by the sentence of other tribunal" *etc.* The definition found in Bouvier's Law Dictionary is as follows: "In practice, that legal proceeding of record which ascertains the guilt of the party, and upon which the sentence or judgment is founded, finding a person guilty by verdict of a jury" *etc.*

In order that the house mentioned in the plaintiff's bill may be declared a nuisance, the owner or keeper thereof must be convicted of selling intoxicating liquors at that particular house. Until that conviction takes place it remains undetermined whether a nuisance exists or not; and a court of equity will never undertake to determine the guilt or innocence of a party charged with selling intoxicating liquors contrary to law. Such a trial would be at war with every rule of practice upon the subject in this country and in England. Wood on the Law of Nuisance (page 928, § 807) says: "In this country as well as in England, unless the party has done something to deprive himself of an equitable remedy to restrain a continuous nuisance after the question of nuisance has been determined in a court of law, an injunction will be granted, even though no actual damage results therefrom.

Under the section of our statute which we are considering, the question of nuisance must be determined by ascertaining the guilt or innocence of the party accused of selling intoxicating liquors at the place named in the bill contrary to law; and the section just quoted from Wood on Nuisance show that the practice is to determine such questions in a court of law, before a court of equity will interfere by injunction. The bill filed in this case merely alleges that intoxicating liquors—whisky, wine, porter, ale, beer and drinks of like nature—for a long time have been, and are now, being sold and vended by John Henretta contrary to law, and without a state license therefor, to the great and irreparable injury of plaintiffs and all other citizens of the state, and that Patrick Henretta, the owner of the house, is knowingly permitting said John Henretta to make such unlawful sales in said house. To these charges the defendants are entitled to plead not guilty, and a trial of the issue thus made before a jury, since a conviction results, under the nineteenth section of said statute, in a fine of not less than twenty dollars nor more than one hundred dollars, and imprisonment may be added for not less than ten nor more than thirty days, and the building or other place shall be abated or closed up as a place of sale *etc.* We can not construe the sections of our statute under consideration so as

to determine that a court of equity is thereby clothed with power to abate the defendant's place of business without first being satisfied of his guilt by proper legal investigation, or that it was the intention of the legislature to take from the defendant his liberty or his property without a trial by jury.

In the case of *Slack* v. *Jacob*, 8 W. Va. 612, this Court held: "(1) It is the duty of the court to uphold a statute when the conflict between it and the constitution is not clear; and the implication which must always exist, that no violation has been intended by the legislature, may require in some cases, where the meaning of the constitution is in doubt, to lean in favor of such a construction of the statute as might at first view seem most obvious and natural. Where the meaning of the constitution is clear, the court, if possible, must give the statute such a construction as will enable it to have effect. (2) It is always to be presumed that the legislature designed the statute to take effect, and not to be a nullity. (3) Wherever an act of the legislature can be so construed and applied as to avoid a conflict with the constitution, and give it the force of law, such construction will be adopted by the courts."

The case of *Mugler* v. *Kansas*, 8 Sup. Ct. Rep. 275 (decided by the supreme court of the United States on December 5, 1887) in which the opinion was prepared by Justice HARLAN, is relied upon to show that no conviction is necessary before any citizen may proceed in equity, and not only restrain the sale of intoxicating liquors, which the plaintiff alleges are being sold in violation of law, but abate the house at which such sales are being made, as a nuisance; but it will be found upon examination that the Kansas statute is very different from our own. The thirteenth section of the Kansas statute declares, among other things, all places where intoxicating liquors are manufactured, sold, bartered or given away, or are kept for sale, barter or use, in violation of the act, to be common nuisances; and provides that, upon the judgment of any court having jurisdiction finding such place to be a nuisance, the proper officer shall be directed to shut up and abate the same.

Our statute, however, provides that "all houses, build-

ings and places of every description where intoxicating liquors are sold or vended contrary to law * * * may be abated as such upon the conviction of the owner or keeper thereof," as thereinafter provided, and not, as under the Kansas statute, upon the judgment of any court having jurisdiction. As I understand our statute, a conviction must precede an abatement, whether such abatement is directed by a decree in equity or a common-law order; while in Kansas the abatement is preceded by the judgment of a court of competent jurisdiction.

Justice HARLAN, in the course of his opinion, says: "As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity, brought to abate a public nuisance;" and it is for that very reason that our statute, not intending to deprive the accused of a trial by jury, provides that the nuisance may be abated upon the conviction of the owner or keeper. Proceeding, Judge HARLAN says: "The statutory direction that an injunction issue at the commencement of the action is not to be construed as dispensing with such preliminary proof as is necessary to authorize an injunction pending the suit. The court is not to issue an injunction simply because one is asked, or because the charge is made that a common nuisance is maintained in violation of law. The statute leaves the court at liberty to give effect to the principle that an injunction will not be granted to restrain a nuisance except upon clear and satisfactory evidence that one exists." This is true, because the statute provides that the judgment of a court of competent jurisdiction must find the place to be a nuisance before it can be abated. In that state they have a Code of practice, while here the distinctions between courts of law and courts of equity are maintained, and their separate powers and jurisdiction are well defined; and we do not understand that a conviction of an offence of this character can be obtained in a court of equity. After a conviction in a court of law, however, a court of equity might better provide for restraining a repetition of the offence and an abatement of the nuisance, although it is clear that under our statute it may be done by either.

The cases of *Littleton* v. *Fritz*, 65 Ia. 488 (22 N. W. Rep. 641) and *Applegate* v. *Winebrenner*, 66 Ia. 67 (23 N. W. Rep. 267) are also relied upon by counsel for the appellees. It will be found by reference to the statutes of Iowa, however, that the sale of intoxicating liquors is prohibited except for mechanical, medicinal, culinary and sacramental purposes, and that parties who are licensed to retail liquors for those purposes are required to obtain a license therefor, and to keep an accurate account of all liquors purchased, the names of the persons from whom purchased, and the amount, also an accurate account of the sales, and to whom sold, which accounts shall be open to the inspection of the prosecuting attorney, the grand jury, and the judge ; and a person selling liquors otherwise is regarded as guilty of a nuisance ; and, under said statutes, proof of the manufactture, sale, or keeping with intent to sell intoxicating liquors in violation of the provisions of said act is deemed sufficient presumptive evidence of the offence, and, upon affidavit made by three residents of the county, the nuisance may be abated by order of the justice of the peace. In that state they have a Code of practice which is very different from ours, so that their rulings in regard to jurisdiction and practice should have little or no influence in determining a question of practice or jurisdiction in this state.

High on Injunctions (section 762) as below stated, asserts the doctrine as follows : "No principal of the law of injunctions is more clearly established than that private persons seeking the aid of equity to restrain a public nuisance must show some special injury peculiar to themselves and independant of the general injury to the public, and in the absence of such special and peculiar injury sustained by a private citizen he will be denied an injunction, leaving the public injury to be re-dressed upon information or other suitable proceedings by the attorney-general in behalf of the public." There can be no doubt that this is the general rule. The same author, in section 20, says : "The subject-matter of the jurisdiction of equity being the protection of private property and of civil rights, courts of equity will not interfere for the punishment or prevention of merely criminal or immoral acts, unconnected with vio-

lations of private rights. Equity has no jurisdiction to restrain the commission of crimes, or to enforce moral obligations and the performance of moral duties; nor will it interfere for the prevention of an illegal act merely because it is illegal."

But when these general rules are altered by statute we must look to the statute, and construe it, in order to determine when equity may be resorted to to restrain or abate a nuisance. And, returning again to said section 18, the question presents itself: When shall houses, buildings and places of every description where intoxicating liquors are sold or vended contrary to law be abated as nuisances? and the answer is apparent in said section, to wit, upon the conviction of the owner or keeper thereof, as is thereinafter provided. Courts of equity, as we have seen, had general jurisdiction to abate nuisances without the aid of that statute, when a proper case was presented; but until this statute was enacted it was not any and every citizen that could maintain a bill for the purpose, but in order to do so they were required to show some peculiar damage or special injury; so that the whole statute must be taken together to ascertain when any citizen may file such bill; and again we find the answer in the statute—"Upon conviction."—

And here it is pertinent to inquire how such conviction is to be obtained. Section 14 of our bill of rights reads as follows: "Trials of crimes and of misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county" etc., and section 1 of chapter 158 of the Code provides that "prosecutions for offences against the state, unless otherwise provided, shall be by presentment or indictment." We deem it unnecessary to quote our statute to show that the sale of intoxicating liquors contrary to law is a misdemeanor, and we have seen how convictions for misdemeanors must be obtained under the constitution and statute, and we therefore conclude that such conviction can not be obtained in a court of equity; and surely no court would either fine or imprison a defend-

ant or abate his property as a nuisance until he was properly ascertained to be guilty of the charge which would render his place of business a nuisance.   Again, we find in High on Injunctions (section 744) the author says : "In cases of conflicting evidence as to the fact of a nuisance, it is proper to refuse an injunction *in limine* until the question of nuisance can be finally determined by a verdict."

Now, the property that is sought to be abated in this suit is described in the bill as a certain lot or parcel of ground on which stands a certain house known as the "Henretta Hotel," fronting on the south side of Tenth street, between Thompson avenue and the Ohio River Railroad track, in the Second ward of the city of Moundsville, Marshall county, W. Va., and a copy of the deed of Patrick Henretta is exhibited with said bill, and prayed to be considered as part thereof, and in said exhibit the property is described as a certain lot of ground situated in Moundsville, Marshall county, W. Va. Said lot fronts sixty feet on Mound street, and runs back south with Mechanics street one hundred and twenty feet, and being on the corner of said streets ; and in proceeding to abate property as a nuisance it must be conceded that the property must be described with convenient certainty, as the defendant may own several lots in the same town, and great damage and injustice may be done in an extraordinary proceeding of this character; and it occurs to me it would be extremely difficult to find any similarity in the description of the lot described in the bill and the one described in the exhibit which is alleged to evidence the title of the defendant.   To say the least of it, the description is too uncertain to enable a court to abate the alleged nuisance, even if the defendant had been convicted.

For these reasons the decree complained of must be reversed with costs; and, this Court proceeding to render such decrree as should have been rendered, it is ordered that the plaintiff's bill be dismissed.

LUCAS, PRESIDENT, concurs.

HOLT, JUDGE :

I concur in the decree, but not in the syllabus.   The bill

must allege conviction of unlawful selling by defendant at the place, and continuance of unlawful selling thereafter at the place, to the annoyance of the plaintiffs and the public; but it is not necessary to allege or prove that the house has been adjudged a nuisance. Or it must allege the nuisance by reason of unlawful selling at the place, and give some good reason for urgency of the need of preliminary restraint until the question of nuisance can be determined by some proper and legal method, or some other good reason why the procedure at law under the statute is not adequate. It was not the intention of the law-maker, by adding this short and very general supplementary clause, to take the whole subject out of the hands of the proper officers, whose special duty it is to look after the matter, and to put it in the power of any citizen of the state, no matter where living, or how extreme his views on the subject, to conduct it to suit himself for the public interests according to his peculiar notions, with perhaps the real purpose of letting the business go on; for it must be remembered that it might be very embarrassing to have a house pronounced not a nuisance, by the connivance of the plaintiff, when it was flagrantly so in fact. Surely it was not the intention of the legislature, when providing this very efficient remedy, to put the whole matter in the hands of any private citizen, whether friend in fact or enemy in disguise, and to thus embarrass the state, counties and municipal corporations. We have not as yet to any great extent a state policy on the subject, but leave it by way of local self-government to counties and towns.

BRANNON, JUDGE, (*dissenting.*)

I regret to differ in opinion with three brother judges, but my opinion is so decided that I am compelled to do so. The majority hold that equity has no jurisdiction under the statute involved in the case until after conviction upon indictment—a position in which I can not unite. I hold that the words "upon conviction" apply only as a precedent condition to abatement upon indictment, not in equity.

In 1877 the legislature amended and re-enacted chapter 32 of the Code, regulating licenses, making sections 14 and

read as follows: "(14) All houses, buildings and places of every description where intoxicating liquors are sold or vended contrary to law shall be held, taken, and deemed to be common and public nuisances, and may be abated as such upon conviction of the owner or keeper thereof, as hereinafter provided."

(15) The owner of any house, building or other place mentioned in the next preceding section, who sells or knowingly permits intoxicating liquor to be sold or vended therein contrary to law, and every person engaged in any such unlawful sale in any such house, building or place, may be indicted for keeping and maintaining a common and public nuisance, and upon conviction thereof he shall be fined not less than twenty nor more than one hundred dollars, and, at the discretion of the court, imprisoned in the county jail not less than ten nor more than thirty days; and judgment shall be given that such house, building or other place be abated or closed up as a place for the sale of such liquors contrary to law, as the court may determine."

Here buildings where intoxicating liquors are sold contrary to law are stamped as nuisances, and persons carrying on such nuisances are subjected to the personal punishment of fine and imprisonment, and remedy against such nuisance is made in a twofold character of personal punishment and abatement of the nuisance upon the conviction of the party, but both upon an indictment only, and no other remedy is prescribed.

In 1887, however, section 14 was amended by adding at its close the words, "and courts of equity shall have jurisdiction by injunction to restrain and abate any such nuisance upon bill filed by any citizen." By this amendment equity is called into service as a remedy against the evil declared by the statute. How does it come into this service at the bidding of the legislature? Does it come as a separate, independent, vigorous remedy, exercising the full powers it had always exercised when dealing with public nuisances, or only as an ancillary or auxiliary remedy, powerless until conviction upon an indictment? The authorities which I shall cite will show that it comes in the former garb. Let me ask,

why did the legislature call into requisition this additional remedy? Because after ten years' experience it had found the remedy by the tedious process of indictment, trial, and verdict of guilty, to be found by twelve men, inefficient and slow. Why call in this additional remedy if it was to be only ancilliary to the law jurisdiction? The statute as it was before amendment gave the law-court ample power to abate the nuisance after conviction. It needed no aid from an injunction after conviction. The law jurisdiction could only abate after conviction; but equity is by the statute given power to "restrain and abate"—to abate when the fact of the existence of the nuisance should be finally fixed according to equity practice, and in the meantime, pending the investigation, to restrain it. This fact—that it need not await the final decision, but could act in restraint at once—is the reason the legislature had recourse to it, and a reason why we should not give it this secondary import. And we are to give to equity this subordinate role under a statute made to protect the public revenue, and the well-bring of society, and those who do pay license taxes for the privilege granted them, when that very statute declares that the provisions referred to "shall in all cases be construed as remedial, and not penal;" that is, not rigidly, to the protection of the evil designed to be remedied, but liberally, so as to suppress the evil, and advance the remedies which the legislature directed against it.

The decision in this case emasculates the statute of its strength, and defeats the legislative design; and not only that, but it denies to equity the force it has always had under the general principles of equity jurisprudence when dealing with public nuisances. If it is true that equity for centuries has wielded an original independent jurisdiction as to public nuisances, may I not ask, can it possibly be conceived that the legislature intended to lessen its efficacy? Rather did it not intend by express provision to declare the acts denounced nuisances, and to expressly apply the remedy by injunction so as to leave no question as to jurisdiction, and to widen its scope by putting that remedy into the hands of any citizen? Such are both the letter and spirit of the statute.

It is said that such a construction of the act, giving equity jurisdiction before conviction at law, deprives a party of a jury-trial, and is not due process of law. There are two answers to this. (1) An injunction is not a criminal prosecution. In the language of the opinion in *Carleton* v. *Rugg*, 149 Mass. 550 (22 N. E. Rep. 55) "the fallacy of the argument lies in disregarding the distinction between a proceeding to abate a nuisance, which looks only to the property that in the use made of it constitutes the nuisance, and a proceeding to punish the offender for the crime of maintaining a nuisance. These two proceedings are entirely unlike. The latter is conducted under the provision of the criminal law, and deals only with the person who has violated the law ; the former is governed only by the rules which relate to property, and its only connection with persons is through property in which they may be interested. That which is declared by a valid statute to be a nuisance is deemed in law to be a nuisance in fact, and should be dealt with as such. The people, speaking through their representatives, have proclaimed it to be offensive and injurious to the public, and the law will not tolerate it. The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate a nuisance. *Attorney General* v. *Hunter*, 1 Dev. Eq. 12 ; *People* v. *City of St. Louis*, 5 Gilman, 351 ; *Ewell* v. *Greenwood*, 26 Ia. 377 ; *Minke* v. *Hopeman*, 87 Ill. 450." See *Cherry* v. *Com.*, 78 Va. 375.

In *Minke* v. *Hopeman, supra,* it was held that they are so far distinct that an acquittal on an indictment for maintaining a nuisance will not bar equitable relief, and that equity need not wait until the fact of the nuisance be settled at law. (2) No jury right is violated, because equity has long had jurisdiction in public nuisance matters, and had it before our constitutions, and that mode of trial is unknown to equity. This doctrine, as well as other principles pertinent to this case, is well stated in the cases of *Mugler* v. *Kansas*, and *Kansas* v. *Ziebold*, quoted below ; also in *Kansas* v. *Crawford*, 28 Kan. 726, citing many authorities. See, also opinion, page 515, in 25 W. Va., in *Barlow* v. *Daniels*. A Kansas statute provided that all places where intoxicating liquors were sold in violation of

the act should be deemed nuisances; and upon judgment of any court having jurisdiction, finding such place to be a nuisance, the sheriff should be directed to shut up and abate the place by taking possession, and destroying all liquors there found, and that the owner should on conviction be guilty of maintaining a nuisance, and punished by fine and imprisonment; and the attorney-general, county-attorney, or any citizen was given the right to an action to abate or enjoin the same.

In the United States supreme court, in *Kansas* v. *Ziebold,* 123 U. S. 623 (8 Sup. Ct. Rep. 273) Mr. Justice HARLAN, in delivering the opinion, said: "Equally untenable is the proposition that the proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law. In regard to public nuisances, Mr. Justice STORY says: 'The jurisdiction of courts of equity seems to be of a very ancient date, and has been traced back distinctly to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property. * * * In case of public nuisance, properly so called, an indictment lies to abate them, and to punish the offenders; but an information also lies in equity to redress the grievance by way of injunction.' 2 Story, Eq. Jur. §§ 921, 922. The ground of this jurisdiction in cases of prepresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and by perpetual injunction protect the public against them in future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury. *District Attorney* v. *Railroad Co.,* 16 Gray, 245; *Attorney General* v. *Railroad Co.,* 3 N. J. Eq. 139; *Attorney General* v. *Ice Co.,*

104 Mass. 244; *State* v. *Mobile,* 5 Port. (Ala.) 279, 294; *Hoole* v. *Attorney General,* 22 Ala. 194; *Attorney General* v. *Hunter,* 1 Dev. Eq. 13; *Attorney General* v. *Forbes,* 2 Myl. & Cr. 123; *Attorney General* v. *Railroad Co.,* 1 Dr. & Sm. 161; Eden, Inj. 259; Kerr, Inj. (2d Ed.) 168. As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity to be brought to abate a public nuisance."

That there is general equity jurisdiction as to public nuisances has been recognized by our own courts. *Beveridge* v. *Lacy,* 3 Rand. (Va.) 63; *Bridge Co.,* v. *Summers,* 13 W. Va. 484. That no jury right is invaded in such cases has also been held in *Carleton* v. *Rugg, supra; Littleton* v. *Fritz,* 65 Ia. 488 (22 N. W. Rep. 641); *Kansas* v. *Crawford,* 28 Kan. 726. In *Eilenbecker* v. *District Court,* 134 U. S. 31, (10 Sup. Ct. Rep. 424) Justice MILLER said, as to the claim that the Iowa act gave equity jurisdiction, and thus took away trial by jury:

"So far as at present advised, it appears to us that all the powers of a court, whether at common law or in chancery, may be called into operation by the legislative body for the purpose of suppressing this objectionable traffic, and we know of no hindrance in the constitution of the United States to the form of proceeding, or to the court in which this remedy can be had. Certainly, it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil as to punish the offense as a crime after it has been committed."

That the legislature under its police power may constitutionally declare places where intoxicating liquors are sold contrary to law to be nuisances is abundantly settled. *Mugler* v. *Kansas,* and *Kansas* v. *Ziebold,* 123 U. S. 623 (8 Sup. Ct. Rep. 273); *Fisher* v. *McGirr,* 1 Gray, 1; *State* v. *Thomas,* 47 Conn. 546; *McLaughlin* v. *State,* 45 Ind. 338; *State* v. *Waynick,* 45 Ia. 516; *Streetor* v. *People,* 69 Ill. 595; Bish. St. Crimes, § 1068.

And outside the statute it seems that by common-law a building where sales of liquor are habitually made contrary to law is a public nuisance. Bish. St. Crimes, § 1068;

*Howard* v. *State,* 6 Ind. 444 ; *Meyer* v. *State,* 42 N. J. Law, 145; *Meyer* v. *State,* 41 N. J. Law, 6 ; *Kansas* v. *Crawford,* 28 Kan. 726.

It is true that though equity has jurisdiction against public nuisances, yet, to enable a private individual to call it into exercise, he must show that the nuisance works a special and peculiar injury to him. *Beveridge* v. *Lacy,* 3 Rand (Va.) 63; *Bridge Co.* v. *Summers,* 13 W. Va. 484; *Talbott* v. *King,* 32 W. Va. 6 (9 S. E. Rep. 48.) But the statute changes that general rule as to this particular class of cases, as it declares that any citizen may obtain an injunction. The legislature may authorize any citizen to sue to abate a public nuisance. The citizen in such case represents the public. *Littleton* v. *Fritz,* 65 Ia. 488 (22 N. W. Rep. 641); *Carleton* v. *Rugg,* 22 N. E. Rep. 55 ; *Applegate* v. *Winebrenner,* 96 Ia. 67 (23 N. W. Rep. 267).

I have discussed only the question of equity jurisdiction. I do not express any opinion as to what quantity of selling is necessary, or whether the selling must be done habitually, to make a place a nuisance.

REVERSED.    BILL DISMISSED.

---

# WHEELING.

