THE STATE, FOR THE USE OF BOONE AND OTHER COUNTIES, v. ORWIG *et al.*

1. Practice: TRIAL AND REFERENCE OF EQUITABLE ACTIONS: FORE-CLOSURE. An action which involves matters of a purely equitable character is triable by the first method of trying equitable actions, although there is also sought in the same action, as one ground of relief, the foreclosure of a mortgage. And the District Court has the power, under our statute, as well as under the former equity practice, to refer such a cause to a master, or referee, without the consent of the parties.

2. Jury: RIGHT OF TRIAL BY: IN EQUITABLE ACTIONS. A party in an equitable action triable by the first method of trying equitable actions, cannot, as a matter of right, demand that the issues be tried by a jury. The provisions of our statute negativing this right are not in conflict with article 1, section 9 of the State Constitution, guaranteeing the right of trial by jury.

*Appeal from the Polk District Court.*

THURSDAY, JULY 23.

For facts, see opinion.    R. G. Orwig alone appeals.

*Phillips, Gatch & Phillips* for the appellant.

*H. O'Connor*, Attorney-General, for the State.

COLE, J. — This is an action brought by the State, pursuant to the authority and provisions of chapter 117 of the Laws of the Eleventh General Assembly. Laws of 1866, p. 124. It is brought in equity for the use of Boone and twelve other counties. There are sixteen

The State v. Orwig.

different defendants, embracing individuals, trustees, public officers, as such, domestic and foreign corporations, partnerships, etc. The following contract is set out as an exhibit to the petition, and forms in part the basis or one of the *bases* of the action : " This memorandum witnesseth, that R. G. Orwig and Maria Orwig, his wife, have, by deed of trust of even date herewith, conveyed to B. F. Allen the following described premises situated in Polk county, to wit:   *   *   *   that said conveyance is made in trust, and for and in consideration of the sum of one dollar in hand paid and the premises, and for the purposes hereinafter expressed and set forth, to wit: that the said R. G. Orwig has been and has acted during the twenty months last past as the private secretary of the Hon. Wm. M. Stone, governor of the State of Iowa; that during said time numerous and divers drafts have been drawn by the proper officers of the treasury department of the United States, in favor of the governor of the State of Iowa, for swamp land indemnity moneys due from the United States to the State of Iowa; that portions of said drafts have been indorsed, as it is alleged, by the said Orwig, in the name of the said W. M. Stone, and have been paid by the proper officers of the federal government or by other parties who have received them as indorsees to different and divers persons now unknown, which payments were made by reason of said indorsements; that the said W. M. Stone now denies the authority of the said Orwig to make the same, and refuses to ratify said indorsements or to approve the payments made on said drafts by reason thereof; that it is claimed that parties who have paid moneys on said drafts by reason of said indorsements, others who have failed to receive moneys due them from the proceeds of such drafts, are in danger of sustaining losses by reason of such indorsements having been made. Now, the said

Orwig stipulates that he will, within one hundred and twenty days from the date hereof, account for all the drafts upon which he has indorsed the name of the said W. M. Stone, or for the moneys paid as aforesaid on them, by showing that the sums paid thereon have been faithfully paid to the treasurer of the State of Iowa or the agents of the several counties entitled to said funds (such agents having been by law authorized to receive the same) or in default of making such showing, he will pay or cause to be paid, either to the counties entitled to receive the same or to the treasurer of the State of Iowa, all sums which have been paid on said drafts by reason of said indorsements, and which have not been paid to the treasurer of the State of Iowa, or to the persons or counties entitled to receive the same; it being the purpose of the said R. G. Orwig, in the execution of the conveyance and this memorandum, to secure to any and every person interested in any manner in the matter of his making such indorsements, against any and every loss which may arise to them by reason thereof.

"It is further stipulated, that said Orwig will assign to said Allen, all policies of insurance which he now holds on said property, or any part thereof; that he shall remain in possession of said property during said term of one hundred and twenty days, with the condition that he shall take good care of the same, and faithfully account to said Allen for the rents and the profits arising from the use of the same, as often as the said Allen shall require, which rents and profits shall be applied on the trust herein expressed; that the said Allen shall have power to take possession of said premises at any time within one hundred and twenty days, if the said Orwig shall fail to comply with either or both of the conditions herein expressed; that if the said Orwig shall not have performed on his part all the stipulations of this memorandum, the

said Allen shall have power to take possession of said property, or of any part thereof, and manage the same as to him shall seem best, applying the rents and profits to the expenses and purposes of this trust; that if, at any time, any portion of said property which is insured, should be destroyed by fire, it shall be the duty of the said Allen to collect the sum or sums which may be due on any assurance of the same, and apply the same to the purposes of this trust; that if, at the end of said one hundred and twenty days, or sooner, the said Orwig shall have performed the stipulations set forth on his part, it shall be the duty of the said Allen to account to him for all moneys which shall have come into his hands by virtue of this memorandum, and to cancel on the records of said Polk county, the deed of trust executed, of even date herewith ; that if said Orwig shall fail to perform said stipulations on his part, either in whole or in part, to defray the expenses of this trust, the said Allen is authorized to sell said property, or so much thereof as shall be necessary to fully indemnify any party or parties who may have lawful or just claims against the said Orwig by reason of the indorsements of said drafts, and to apply the proceeds arising from the same to the payment of such expenses or demands for such indemnity ; and this memorandum is executed with the express understanding on the part of each and all the parties, that it shall not operate as an estoppel of the right of either or any of them to either assert or deny the authority of the said Orwig to make the indorsements above mentioned.   In witness whereof we have hereunto set our hands this 16th day of December, 1865.

"R. G. ORWIG,
MARIA S. ORWIG,
B. F. ALLEN."

There was also annexed to the petition an exhibit of a deed of trust in the usual form, executed by Orwig and wife, to Allen, with power of public or private sale, to secure the performance of said contract on the part of said Orwig.

The petition then avers, that there were drafts issued by the United States for the benefit of the several counties, specifying the amount to each, aggregating $41,448.21; that said Orwig, fraudulently, and without authority, indorsed said drafts with, and forged the name of W. M. Stone, governor of the State of Iowa, and negotiated a part thereof to the First National Bank of Des Moines, and a part thereof to the State National Bank of Des Moines (specifying the drafts to each) and appropriated the proceeds to his own use, and has failed to account for any part thereof. The said banks are made defendants, and charged with having paid said drafts on forged indorsements, and that they still hold the money due thereon, for the benefit of the parties entitled to the proceeds of the drafts.

The American Emigrant company is made defendant, as asserting claim to the proceeds of some of the drafts, by virtue of being assignee of the swamp land claims of certain counties. Rollins & Co. are made defendants, as claiming a vendor's lien upon a part of the property embraced in the deed of trust, which lien is denied. C. P. Luse is made defendant as claiming a lien upon a certain other portion of the property. Byron Rice is made defendant as claiming a vendor's lien upon another portion. C. Youngman is made defendant as claiming a mechanic's lien upon a part of the property. J. B. Stewart is also made defendant as claiming another lien upon a part of the property. All these claims and liens are denied. Hon. W. H. Holmes, State treasurer, is made defendant, as being the proper person entitled to receive the proceeds of said drafts, and to whom Orwig

claims to have accounted for a part thereof; Hon. Wm. M. Stone, governor of Iowa, is made defendant as being the person whose name was indorsed on said drafts, and who denies the authority of Orwig to so indorse them; and B. F. Allen is also made defendant, as trustee.

The petitioner asks an accounting between the plaintiff and the several parties named as defendants; the ascertainment of the several liens claimed, their priorities and the amounts of each; a decree against the several parties for the several sums due, and a foreclosure of the deed of trust and a sale of the property therein described for the benefit of the several parties entitled, and for general relief.

This is but a very condensed statement of the petition and exhibits, which cover near twenty-five pages of the transcript; but it is sufficient to illustrate the point determined. After the defendant, Orwig (and most or all the other parties), had answered, Orwig's answer being chiefly in denial, the District Court, on motion of the attorney-general, and against the objection of Orwig, ordered that " the issues both of law and fact herein be referred to C. C. Nourse for trial (he having accepted such appointment in open court), and he is ordered to report his finding therein to this court at its next regular term." After said motion was made, but before it was determined, the defendant, " R. G. Orwig for himself demands that the whole issue be tried by a jury under the instructions of the court, as in cases by ordinary proceedings." This motion was overruled and Orwig excepted thereto, as well as to the order of reference.

*1. PRACTICE: trial and reference of equitable actions: foreclosure.*

This ruling of the court refusing a jury trial and ordering a reference, is the only error assigned.

That this action is one of purely and exclusively equitable cognizance, under the rules and practice as they

obtained aside from modification by statute or Code, it seems to us, is beyond question. It seeks an accounting; it seeks an adjustment of priority of liens; it seeks a settlement of the whole controversy, and a prevention of a multiplicity of suits; it seeks relief from the alleged fraudulent acts of a person occupying a fiducial relation, or, as Lord Coke expresses it, "a breach of confidence;" it seeks the enforcement of a trust. Any one of these was formerly a ground for equitable jurisdiction, and all combined, it would seem, ought to place the matter beyond controversy or doubt. It being settled that the cause is purely an equity action, it would be triable according to the first method of trying equitable issues, although it might also involve, as one of the incidents of relief, the foreclosure of a mortgage. Indeed, it has been held by this court, that where a cause involves one matter of exclusively equitable jurisdiction, it was error for which this court would reverse a judgment, to try the cause by the second method, although the main relief sought by the action was a foreclosure of a mortgage. *Henderson* v. *Legg et al.*, 16 Iowa, 484. This action being properly and necessarily in equity, and triable by the first method, it follows that the District Court had the right (leaving out of view for the present any guaranteed right of trial by jury), both under the former equity practice and under our Code, to refer the cause to a master or referee, without the consent of the parties. Rev. §§ 2999, 3000, 3090, subdiv. 2, 4.

By the provisions of our Code, all equitable actions are triable by the first method, that is, on written evidence, as chancery causes were formerly tried, except in divorce cases, in foreclosure of tax title cases, and of mortgages; in default cases, and in cases where all the parties thereto consent to try by the second method, in which cases the second method shall obtain. By the second method of

trial, the evidence shall be the same as in ordinary actions, that is, as in actions at law.   Where an action is brought for causes, and relief purely equitable, although it is also properly sought in the same action as one ground of relief to foreclose a mortgage, this latter relief sought cannot control the whole action and its manner of trial.   Mortgage foreclosure cases are generally merely for collection, and the issues made relate to the indebtedness rather than to the mortgage; and practically such actions are suits upon notes, and the clear purpose of the provisions was to give to defendants their ordinary right of jury trial as to the indebtedness, and not to control the trial of equitable causes or issues.

But the point is made by counsel for appellant, that the defendant Orwig had a right, under our Constitution and laws, to have the issues of fact tried by a jury.   Without undertaking to state at length the ingenious and able argument of the appellant's counsel made at the hearing of this cause, we may state briefly that it is based mainly upon the Constitution, and the law of 1853.   The counsel claiming that if the Code does deny the right of trial by jury in any case, even though it be an equitable action, then it is in violation of the new Constitution (art. 1, § 9), which declares, that the right of trial by jury shall remain inviolate.   The argument is this: The old Constitution (art. 1, § 9) made the right of trial by jury inviolate; and by section 1 of chapter 90 of the Laws of the Fourth General Assembly (Laws of 1852–3, p. 148), it was enacted, " That in all cases in the District Court, either party may demand a trial by jury, and jury fees in said courts are hereby abolished ; " and that when the new Constitution was adopted, making the right of trial by jury inviolate, it referred to the laws relating to jury trials then in force, and prohibited the legislature from

2. Jury:
right of trial
by: in equit-
able actions.

curtailing the right as then given by law. And the conclusion of the argument is, that, therefore, under the Constitution, the right of trial by jury exists " in *all cases* in the District Court," although it may be denied by the Code as to purely equitable actions.

Without now conceding or stopping to controvert the proposition made by counsel, that when the new Constitution was adopted, it guaranteed the right of trial by jury as then provided by law, rather than as it obtained at the common law, we are forced to dissent from his conclusion upon another ground, and that is, that the law of 1852–3 did not give the right of trial by jury in all cases. The Code of 1851 provided for and required a jury fee of three dollars in all cases of jury trial (§ 1772), and also that such fee should be paid in advance (§ 2528). Now, we hold and construe the law of 1852–3 to be simply a repeal of these provisions, by declaring that a party should have a right of trial by jury in all cases, without being required to pay in advance a fee of three dollars, or to pay it at all. Such is the construction the law has heretofore received from both bench and bar, and in no case, so far as the reports show or our knowledge extends, has the construction now contended for been claimed. However this may be, there can be no reasonable doubt as to its true and correct construction as above given. From this, it follows that the defendant did not have a right, either under the Constitution or laws, " to demand that the whole issue be tried by a jury under the instruction of the court." See *Mead* v. *Walker*, 17 Wis. 189 ; *The County Board of Supervisors* v. *Dunning*, 20 id. 210 ; *Ross* v. *Irving*, 14 Ill. 171 ; *Murphy* v. *The People*, 2 Cowen, 815 ; and see also the question discussed in brief of counsel and opinion of court in *Lewis et al.* v. *Garrett's Administrator*, 5 How. (Miss.) 434.

The provisions of our Code, sections 3080 to 3097, in relation to proceedings before referees, and the effect of a referee's report, are not in excess of the powers of a master, or materially different from the chancery practice prior to the Code. They certainly do not cast additional burdens violative of any constitutional right of parties litigant.

The chief justice concurs in the conclusion resulting from the foregoing, but prefers to rest that conclusion upon this thought: Conceding appellant's proposition, that, under sections 2999 and 3000, the cause was, as to Orwig, a mortgage foreclosure case, yet, it was undeniably of *equity* cognizance, as distinguished from a *case at law*, and being such, the court, under section 3090, could compulsorily refer it, and appellant could not, as of right, demand a jury trial, since neither the old nor new Constitution, nor any statute, ever gave an absolute right to a jury trial in *equity* suits. The other members of the court concur in this view also.

There was no error in refusing a jury trial, nor in the order of reference, and the order of the District Court is

Affirmed.