Littleton v. Fritz.

LITTLETON v. FRITZ.

1. **Constitutional Law:** CHAPTER 143, LAWS OF 1884: SALOONS: NUISANCES: INJUNCTION BY CITIZEN OF COUNTY: RIGHT TO TRIAL BY JURY: EQUITY JURISDICTION: CIVIL ACTION FOR CRIMINAL OFFENSE: SPECIAL DAMAGE TO PLAINTIFF: INJUNCTION BEFORE CONVICTION. Under the provisions of § 12, Chapter 143, Laws of 1884, any citizen of a county where a nuisance is kept, in the form of a place used for the unlawful sale of intoxicating liquors, may maintain an action in equity to enjoin and abate it; and said act is not repugnant to the constitution, as depriving the defendant of the right of trial by jury, nor as being an attempt by the legislature to enforce a criminal law by a civil action, nor because it authorizes any citizen of the county to maintain the action for injunction without showing that he is especially damaged by the nuisance; and in such cases the court may grant a temporary injunction before the defendant has been convicted criminally for keeping the nuisance.

*Appeal from Polk Circuit Court.*

TUESDAY, MARCH 17.

THIS is an action in equity, by which the plaintiff, a citizen of Polk county, seeks to enjoin and abate a nuisance, which it is alleged the defendant keeps and maintains in a certain building in the city of Des Moines, by selling intoxicating liquors therein contrary to the law. A temporary injunction was prayed, and notice of the application therefor was served on the defendant, who appeared, and the motion for the injunction was sustained, and the writ was issued and served upon defendant. This appeal was taken from the order granting the temporary injunction.

*Lehman & Park, W. S. Sickmon* and *Bills & Block,* for appellant.

*Baylies & Baylies, Smith McPherson, Attorney-general, Jed. Lake, James O. Crosby, S. P. Adams, Rickel & Bull* and *Remley & Remley,* for appellee.

ROTHROCK, J.—I. The plaintiff does not aver in his petition that he has sustained, or will sustain, any damage or

Littleton v. Fritz.

1. CONSTITU-
TIONAL law:
chapter 143,
laws of 1884:
saloons : nuis-
ance: injunc-
tion by citizen
of county :
right of trial
by jury :
equity juris-
diction.

injury by the maintenance of the alleged nuisance, for which he can be compensated in a money judgment. He claims the right to maintain the action because he is a citizen of Polk county, and because the keeping and maintaining the nuisance in the county is a great damage and injury ·to the property, peace and safety of the plaintiff and other citizens of said county.

The case, therefore, turns upon the question whether any citizen of the county, where a nuisance of this character is kept, may maintain an action in equity to enjoin and abate it,· and whether the court has the power under the law to order a temporary injunction in such cases. It is not disputed that the building or erection of whatever kind, in or at which intoxicating liquors are unlawfully manufactured or sold, is a nuisance. It was provided in section 926 of the Code of 1851, that " the places commonly known as ' dramshops ' are hereby prohibited, and declared public nuisances. * * * " The law with reference to the sale of intoxicating liquors has undergone many changes since 1851; but the unlawful traffic has always since that time been declared by legislative enactment to be a nuisance. The provision above cited has never been repealed. That the legislature has ample power to prohibit the manufacture and sale of intoxicating liquors has been settled law in this state for more than thirty years. Legislation upon that subject has been uniformly upheld and approved by this court since the decision in the case of *Our House v. State*, 4 G. Greene, 172, and the case of *Santo v. State*, 2 Iowa, 165. Thousands of persons have been prosecuted by indictment, fined and imprisoned in this state for the maintenance of nuisances in the keeping of saloons.

By chapter 143 of the Laws of the Twentieth General Assembly, the statute upon this subject was amended. It was made more sweeping in its provisions, by prohibiting the sale of all kinds of intoxicating liquors, under heavy penalties,

excepting sales for certain purposes by permit from the board of supervisors of the county. After providing for punishment for specific sales, the act, in its twelfth section, provides that, for violation of the law by unlawful sales, " the building or erection, of whatever kind, or the ground itself, in or upon which such unlawful manufacture or sale, or keeping with intent to sell, use, or give away, of any intoxicating liquor is carried on, or continued, or exists, and the furniture, fixtures, vessels, and contents, is hereby declared a nuisance, and shall be abated as hereinafter provided; and whoever shall erect or establish or continue or use any building or erection for any of the purposes prohibited in said section (the section of the law prohibiting sales) shall be deemed guilty of a nuisance, and may be prosecuted and punished accordingly, and upon conviction shall pay a fine of not exceeding $1,000, and costs of prosecution. * * * Any citizen of the county where such nuisance exists, or is kept or maintained, may maintain an action in equity to abate and perpetually enjoin the same, and any person violating the terms of any injunction granted in such proceedings shall be punished as for contempt by a fine of not less than $500, nor more than $1,000, or by imprisonment in the county jail not more than six months, or by both such fine and imprisonment, in the discretion of the court."

This statute plainly authorizes any citizen of the county to maintain the action, and there can be no denial of the right of action, unless it be held that the legislature had no constitutional power to enact the law. Counsel for appellant contend that the statute is repugnant to sections 9, 10, 11 and 12 of article I of the constitution. These sections provide that " the right of trial by jury shall remain inviolate," and that in all criminal prosecutions, involving life or liberty, the accused shall have the right to a trial by jury, upon an indictment by a grand jury.

The question presented by counsel in argument may be stated in this general form: Is the statute under considera-

tion an attempt upon the part of the law-making power to deprive the citizen of the constitutional right to be tried by a jury? It is important at the outset to inquire: In what cases was the right of trial by jury inviolate when the constitution was adopted? for it will be observed that the provision is that, the right "shall *remain* inviolate." This provision, or its equivalent, is common to the constitutions of many states of the Union, and it has been held that it secures the right of trial by jury in all cases in the trial of which a jury was necessary according to the principles of the common law. *Isom v. Mississippi Cen. R'y Co.*, 36 Miss., 300. In *Plimpton v. Town of Somerset*, 33 Vt., 283, it is said that "the general rule of construction in reference to this provision of the constitution is, that any act which destroys or materially impairs the right of trial by jury, according to the course of the common law, in cases proper for the cognizance of a jury, is unconstitutional."

The jurisdiction of courts of equity to enjoin and abate nuisances is of very ancient origin: In 2 Story, Eq., 921, this language is employed: "In regard to public nuisances, the jurisdiction of courts of equity seems to be of very ancient date, and has been directly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances strictly so called, but also to *purprestures* upon public rights and property." This general rule is not, and cannot be, disputed. Courts of equity in nearly all the states of the Union entertain jurisdicion to restrain and abate nuisances, either at the suit of a public prosecutor, or at the instance of a private individual, who shows that he sustains some special injury by the establishment or existence of the nuisance.

Such a case being of equitable cognizance, neither party could, at the time of the adoption of the constitution, demand a jury trial as matter of right. There was no statute law or constitutional provision then in force which gave an absolute right to a trial by jury in an equity case. *State v.*

*Orwig*, 25 Iowa, 280; *Clough v. Seay*, 49 Iowa, 111. All actions in equity were required to be tried by a chancellor. It is true, the chancellor was authorized, by the manner of procedure in courts of equity, to make up issues of fact, called issues out of chancery, and refer them to a jury to enlighten his conscience; but the parties had no right to demand a trial of any issue in an equity case by a jury.

But it is insisted by counsel for appellant that courts of equity did not have jurisdiction at the time of the adoption of the constitution to abate any nuisance, except in cases where some property right was affected by the maintenance of the nuisance; and it is contended that the enlargement of the jurisdiction to that class of cases in which property rights are not involved, is an abridgment of the right of trial by jury. The jurisdiction of the cause of action " is the power over the subject-matter given by the laws of the sovereignty in which the tribunal exists." 1 Bouv. Law Dict., 769.

Let it be conceded that courts of equity, before the adoption of the constitution, declined to entertain actions of injunction to restrain and abate nuisances in cases where no property rights were involved. The legislative history of this state, and the jurisdiction entertained by its courts, do not warrant the conclusions that there is no legislative discretion in regard to what controversies shall be of equitable cognizance. Since the adoption of the constitution, a jury has been allowed in actions for divorce, and this right has been taken away. So in case of the foreclosure of mortgages and mechanics' liens. We are not, then, required to examine the laws in force at the time the constitution was adopted, and hold that in every case which was then triable by a jury the right to such trial remains inviolate. Such a construction of the constitutional provision involves too narrow a view of legislative power. It being conceded that equity had jurisdiction in cases of nuisance, we can see no invasion of the rights of the citizen by an act of the legislature extending it to cases where no distinct property right is involved;

and we may say here that the distinction sought to be made between nuisances where property rights are involved and where they are not, is very limited, narrow, and ill defined.

Courts constantly enjoin nuisances where no damages can be estimated in money, and where the nuisance produces mere annoyance and discomfort to the complaining party; as a manufacture producing discomfort to individuals; (*Catlin v. Valentine*, 9 Paige, Ch., 575;) a blacksmith-shop near plaintiff's dwelling; (*Faucher v. Grass*, 60 Iowa, 505;) a livery-stable; (*Shiras v. Olinger*, 50 Iowa, 571;) a hog lot; (*Richards v. Holt*, 61 Iowa, 529.) These, and many other cases which might be cited, show a very great relaxation of the old rule that no action will lie to restrain and abate a public or common nuisance, unless the plaintiff, in the language of Blackstone, "suffers some extraordinary damage beyond the rest of the king's subjects by a public nuisance, in which case he shall have private satisfaction by action; as if, by means of a ditch dug across a public highway, which is a common nuisance, a man or his horse suffer any injury by falling therein, for this particular damage, which is not common to others, the party shall have his action."

It is not easy to perceive why the law-making power may not authorize the suppression of the saloon nuisance by injunction because no property rights are involved. It was always allowable to enjoin the obstruction of a public highway, or a navigable stream, by an action in equity at the suit of the public. This was done because it was claimed that a property right in the public was involved; and such proceedings were authorized without the aid of any statute. Such nuisances are detrimental to the public, because they obstruct travel and impede navigation. But the damages to the public are no more susceptible of computation than the injuries to the public by the unlawful maintenance of a saloon. In *State v. Iron Cliffs Co.*, 54 Mich., 350, in discussing the power of the legislature under this provision of the constitution, it is said that "its power to create and enlarge

equitable jurisdiction is not only undoubted, but unlimited." Without further dwelling upon this branch of the case, we conclude that the statute in question, so far as it authorizes the action, is not repugnant to the constitution.

II. It is further insisted that the action in equity authorized by the statute cannot be maintained, because the legislature has no power to enforce a criminal law by a civil action. But "one maintaining a nuisance may not only be punished in a criminal proceeding, but a civil action at law to recover damages in a proper case, and an action in equity to restrain the nuisance, may be prosecuted against him. *Richards v. Holt*, 61 Iowa, 529; *Ewell v. Greenwood*, 26 Id., 377. These cases were decided without any reference to a statute expressly authorizing an action in equity, in addition to criminal punishment. It ought not to be claimed that a statute is unconstitutional which merely provides a remedy which was available without the statute. And it must be remembered that the defendant is not convicted and punished for a crime by the injunction. It belongs to that class of remedies which may properly be provided by statute to aid in the administration of preventive justice. It stays the arm of the wrong-doer. It does not seek to punish him for any past violations of the law. Its purpose is to prevent a public offense, and suppress what the law declares to be a nuisance. The denial of a trial by jury is not as oppressive to the party charged, as the statute requiring a person who threatens to commit a public offense to give bonds with sureties to keep the peace towards the people of the state, and, in default of giving the bond, committing him to prison. Code, §§ 4115–4119. So far as we are advised, no one has ever claimed that the law requiring security to keep the peace was a denial of the right of trial by jury.

The defendant, in order to succeed in the defense that the proceeding by injunction is an attempt to enforce a criminal law by civil process, demands, in effect, that the courts must

*Marginal note:* THE SAME: civil action for criminal offense.

establish the principle that, because the nuisance complained
of is a crime, it is entitled to favor and protection in a court
of equity. Such rule would not command the respect or
approval of any one.

There are many adjudged cases, aside from those above
cited, which expressly hold that the fact that a nuisance is a
crime, and punishable as such, does not deprive equity of its
jurisdiction to restrain and abate it by injunction. *People
v. City of St. Louis*, 5 Gillman, (Ill.,) 351; *Attorney-general
v. Railroad Co.*, 3 Greene, (N. J.,) Eq., 136; *Attorney-
general v. Hunter*, 1 Dev. Eq., 12; *Minke v. Hopeman*, 87
Ill., 450. And this rule applies to actions by private individ-
uals, and to suits for the benefit and in behalf of the public.

III.   It is further claimed that the statute is invalid
because it authorizes an action to be brought by any citizen
of the county, without a showing that he is
especially damaged by the nuisance. What we
have said with reference to the power of the
legislature to enlarge the jurisdiction of a court of equity
will apply with the same force to this objection. It is surely
within the power of the legislature to designate the persons
at whose suit a nuisance may be enjoined and abated. The
reason of the rule which formerly obtained, that a private
action will not lie for a public nuisance without special dam-
ages, was that to authorize private actions would create a
multiplicity of suits, one being as well entitled to bring an
action as another. *South Carolina R'y Co. v. Moore*, 28 Ga.,
418.   But because the enforcement of a statute may create a
multiplicity of actions is no ground for declaring it uncon-
stitutional.   Questions of policy or expediency in legislation
are for the law-making power itself, and courts have no
authority to interpose their judgment against that of the leg-
islature, upon the ground that the law in question may be
inexpedient, or that some other enactment would better serve
to accomplish the desired object.

But there is another view of this question which must not

*Margin note: THE SAME: special damages to plaintiff.*

be overlooked. There can be no doubt that it is within the power of the legislature to designate the person or class of persons who may maintain actions to restrain and abate public nuisances, and when that is done the action is for all purposes an action instituted in behalf of the public, the same as though brought by the attorney general or public prosecutor. We are strongly inclined to think that in this case a decree for the defendant would be a bar to any other like action for an injunction, upon evidence of sales of liquor within the same time as is embraced in this action. The plaintiff is by law made the representative of the public in bringing and maintaining the action.

IV. Lastly, it is claimed that there is no authority for the issuance of a temporary injunction, and that there can be no THE SAME: injunction until after a conviction for unlawful temporary in- sales of intoxicating liquors. We have already junction be- fore convic- said that the action in equity is independent of tion. criminal prosecutions, and it is wholly immaterial whether the defendant has been convicted or not. We think the temporary injunction was properly allowed. Section 3391 of the Code, by plain implication, authorizes a temporary injunction in actions to restrain a nuisance. This is an action for an injunction only. No damages are claimed, and no other relief is demanded. The law denounces the unlawful main- tenance of a saloon or dram-shop as a nuisance. The plaintiff, in his own behalf and in behalf of other citizens, demands that the defendant cease from pursuing his unlawful and criminal occupation, and he prays that a temporary injunction be allowed. It plainly appears from the petition that the defend- ant, when the petition was presented to the judge, was and had been a defiant, persistent and open violator of the law. In view of these facts, the showing made for the issuance of the temporary writ was sufficient, under section 3388 of the Code. The law having denounced the defendant's calling and occupation as a nuisance, in the judgment of the law he was every day doing acts which produced great and irrepar-

Littleton v. Fritz.

able injury to the plaintiff and other citizens; injuries, that in the judgment of the legislature, ought to be enjoined and prevented by an action in equity. No earthly power is able to repair the injury which may be done by the maintenance of the nuisance from the commencement of the action until the final decree, and for that reason a temporary injunction is authorized by the law.

We have disposed of every question made by counsel in the case. We have pursued a different order in the discussion of the case from that adopted by counsel, and have not reviewed nor commented upon all the authorities cited; but we think we have fairly disposed of every question presented. The case has been exhaustively and ably argued, orally and in print, and we have given it our most careful consideration; and keeping in view that important and oft-repeated rule, that no court is authorized to declare an act of the legislature invalid unless it is plainly, palpably and beyond doubt repugnant to some provision of the constitution, we reach the conclusion that the court below did not err in entertaining the action and in granting the temporary injunction.

AFFIRMED.