AUSTIN L. DAVIS, and others, In Equity,

*vs.*

ZEBULON G. AULD, and others.

SAME *vs.* GEORGE SCHOPPE, and another,

96 559
d97 482

96 559
98 198

Sagadahoc.　　Announced April 11, 1902.

Opinion September 12, 1902.

*Equity.　Injunction.　Intox.　Liquors.　Nuisance.　Const.　Law.　Jury Trial.
R. S., c. 17.　Stat. 1891, c. 98.*

1. It is the duty of the state to guard the peace, safety, health and morals of its people, and for this purpose it may make use of all the powers and processes of government, executive, legislative and judicial, except where forbidden by some provision of the State or United States Constitution.

2. In this state it has long been settled by common consent expressed in both legislative and judicial action that "all buildings, shops or places where intoxicating liquors are sold for tippling purposes, and all places of resort where intoxicating liquors are kept, sold, given away or dispensed in any manner not provided by law, are common nuisances,"—that is, are hurtful to the peace, safety, health or morals of the people. R. S., c. 17, § 1.

3. That the state by statute or common law can proceed, and has hitherto proceeded by criminal prosecution to punish for the maintenance of a common nuisance, and also to abate the nuisance, does not prevent the legislature authorizing it to proceed in equity to restrain, enjoin or abate such nuisance, by the use of the equity writ of injunction.

4. The statute of 1891, c. 98,—conferring upon the supreme judicial court and any justice thereof jurisdiction in equity, upon the petition of not less than twenty legal voters of the town where a liquor nuisance under R. S., c. 17, is alleged to exist, to restrain, enjoin or abate such nuisance and to issue an injunction for such purpose,—is within the legislative power and is not prohibited by any provision in either constitution.

5. There is no provision in either constitution, requiring an equity suit in behalf of the state or the people, to be begun and carried on by the official public prosecutor. Hence, the legislature may authorize such suit in the case of a common nuisance to be maintained by twenty legal voters in the town where the nuisance is alleged to exist.

6. The statute of 1891, c. 98, authorizes proceedings in equity without first obtaining a judgment at law.

7. That the disobedience by the defendant of the injunction in such suit is ipso facto and necessarily a criminal offense, subjecting him to punishment

for the crime, does not exempt him from other punishment by the court for disobedience of its injunction, as for contempt.

8.   The operation of the statute is not to punish for past criminal acts, nor to enjoin from the commission of criminal acts in the future, but is to prevent the further continuance of a present, existing, continuous nuisance or hurt.

9.   The procedure under the statute is according to the ordinary civil procedure in equity and the petition can be sustained upon a mere preponderance of evidence in favor, since none of the results of a conviction for crime follow.

10.   The respondents in these cases did not claim nor ask for a jury trial but submitted, without such request, to a hearing by a single justice, as usual in equity proceedings.   Hence, they have not been denied a jury trial, even if they were entitled to one under the constitution and laws.

11.   When the findings of fact by the justice sitting in equity in the first instance are not shown upon the appeal to be clearly erroneous, they must be affirmed.

In Equity.   On appeal and exceptions by defendants.   Overruled.

Petitions by twenty tax-payers of the city of Bath under R. S., c. 17, § 1, as amended by statute of 1891, c. 98, against the owners and occupiers of certain buildings in that city; and praying for injunctions, both temporary and perpetual, against the defendants, and to restrain them from using or allowing said places to be used for the illegal sale or keeping for sale intoxicating liquors.

The defendants demurred; but the justice sitting below, in the first instance, overruled the demurrers, and having heard the parties who by answers denied the charges of the petitions, sustained the petitions and granted injunctions.

The defendants took appeals from the decrees ordering the injunctions; also filed exceptions to the rulings upon the demurrers.

The statute under which the petitions were brought is as follows:—"Sec. 1.  .  .  .  .   all houses, shops or places where intoxicating liquors are sold for tippling purposes, and all places of resort where intoxicating liquors are kept, sold, given away, drank, or dispensed in any manner not provided for by law, are common nuisances.   The supreme court shall have jurisdiction in equity, upon information filed by the county attorney or upon petition of not less than twenty legal voters of such town or city, setting forth

any of the facts contained herein, to restrain, enjoin or abate the same, and an injunction for such purpose may be issued by said court or any justice thereof."

*Frank E. Southard,* for plaintiffs.

*Geo. E. Hughes,* for defendants Auld and Davis.

· Revised Statutes, c. 17, § 16, gives a remedy at law. These complainants have not invoked this remedy; their bill gives no special reason why the rights of the parties should not be first settled at law. A bill seeking an injunction must allege facts which clearly show that the plaintiff will suffer a substantial and irreparable injury which cannot be adequately remedied at law. *Haskell* v. *Thurston,* 80 Maine, p. 132; *Wasson* v. *Sanborn,* 45 N. H. 169; *Tracy* v. *LeBlanc,* 89 Maine, 304, and cases. Where an action at law may be maintained, it must appear by the bill that the remedy by it, is not plain, adequate and complete. *Porter* v. *Land and Water Company,* 84 Maine, 195. A court of equity will not undertake to decide whether a nuisance exists until the plaintiff shall fully establish his claims at law. *Eastman* v. *Amoskeag Man. Co.,* 47 N. H. 71. There is no suggestion in this bill, nor in the evidence introduced in the case to show, but what the petitioners have a plain, adequate and complete remedy by an action at law. "It is not every case which would furnish a right of action against a party for a nuisance which will justify the interposition of a court of equity to redress the injury or remove the annoyance." Story Eq. § 925. In this bill it is claimed that the alleged nuisance had been in existence at least one year, prior to the filing of the petition; if such be the case, the nuisance should have been established by a suit at common law before equity will interfere to abate it. *Porter* v. *Witham,* 17 Maine, 294. '

In *Worthington* v. *Waring,* 157 Mass. 421, 422, the court said, "if the petition sets forth what constitutes a misdemeanor at common law, the remedy is by indictment." It is well established that equity has, in general, no jurisdiction to restrain the commission of crime or to assess damages for torts already committed. The bill charges these respondents with keeping and maintaining a nuisance which is criminal under our statutes, and for which the statute provides a penalty, and where a complete remedy is provided. This

looks like a proceeding to enjoin the defendants from selling intoxicating liquors with the end in view to punish, as disobedience of the injunction and contempt of court, the very act which was before punishable as a crime.

It never was the intention of the constitution that a party should be punished by proceedings in equity for violating general laws, nor should he be tried by a court acting without a jury. We have always enforced the statutes relative to the illegal sale of intoxicating liquors, by criminal complaints or indictments, and this proceeding is entirely novel and never was in vogue at the time the constitution was adopted, and for these reasons we think it is inconsistent with the constitution of Maine.

*John Scott,* for defendant Thompson.

*Frank L. Staples,* for defendant Schoppe.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, JJ. WISWELL, C. J., and STROUT, J., dissented.

EMERY, J. In this state it has long been settled by common consent, expressed in both legislative and judicial action, that "all buildings, shops or places where intoxicating liquors are sold for tippling purposes, and all places of resort where intoxicating liquors are kept, sold, given away, drank or dispensed in any manner not provided by law are common nuisances"—that is, are hurtful to the peace, safety, health or morals of the whole people. R. S., chap. 17, § 1.

Prior to 1891, one method provided by that statute for suppressing, restraining, or abating such nuisances was by a criminal prosecution against the persons keeping or maintaining them, followed upon conviction by fine or imprisonment of the individual, and, if need be, by a warrant for abatement by the sheriff. What other powers the courts then had to deal with such nuisances outside of the power above named need not now be considered.

In 1891, however, the legislature by statutory enactment expressly conferred upon this court and any justice thereof jurisdiction in equity, upon petition of not less than twenty legal voters of the

town where such nuisance is alleged to exist, to restrain, enjoin or abate the same and to issue an injunction for such purpose. Public Laws of 1891, c. 98. This equity jurisdiction, thus expressly conferred by statute, was in this proceeding invoked against these respondents by these petitioners, twenty legal voters of the city of Bath, to restrain and enjoin them from longer keeping or maintaining such a nuisance in Bath.

The respondents demurred to the petition and also answered, denying that they were keeping, or maintaining such nuisance as alleged. Upon hearing, the justice of the first instance overruled the demurrer, and, upon further hearing upon the issues of fact, found that the premises described in the petition were a common nuisance, and then decreed that the respondents be perpetually enjoined from using any part of the described premises for the illegal sale, or illegal keeping of intoxicating liquors. The respondents excepted to the overruling of their demurrer and also appealed from the final decree.

The respondents now urge several objections to this procedure and decree.

I. The respondents contend that this is really a criminal prosecution, though styled a petition in equity, and that if maintained it deprives them of safeguards placed by the constitution about all persons accused of crimes. The argument is that the purpose and effect of the proceeding are to place the respondents under a court injunction, and then further proceed against them for a violation of the injunction, as for contempt of court, and thus subject them to punishment in the discretion of the justices of the court without the protection afforded by the constitution and statutes to respondents in criminal prosecutions.

Whatever may be said of the argument, we cannot accept the respondents' premises. A criminal prosecution is to punish the individual for the criminal part of an act already committed. This procedure does not subject them to punishment nor seek to punish them for any past act. It does not subject the respondents to any fine, imprisonment or disability of any kind for anything they may have

done prior to the filing the petition. The record cannot be used against them as a conviction for any crime, even for the smallest misdemeanor. The procedure is purely civil in character as well as in name. It has none of the peculiar elements or consequences of a criminal prosecution. *Rancour's Petition*, 66 N. H. 172. But it is argued that if the decree be affirmed and they be hereafter charged with a violation of the injunction, they would then also and ipso facto be charged with a crime and be liable to punishment for the crime at the discretion of justices unrestrained by the rules and principles governing criminal prosecutions and sentences. It is true, that if the respondents violate the injunction, they will also and ipso facto commit an offense against the criminal law. The same act is often both a civil and criminal wrong. Many acts formerly regarded as civil wrongs only have later been made also criminal. They do not thereby become only criminal. The civil remedy is not taken away. The sufferer by fraud may maintain his civil action against the wrong doer, and the latter, because his act is also a crime, cannot successfully claim that he is to be tried only by the rules of the criminal law. The equity jurisdiction of the court to restrain and enjoin by equity procedure trespasses upon property has long been conceded. Many of such trespasses have also from time to time been made by statute indictable offenses. These statutes, however, have not abridged the equity jurisdiction of the court as to such trespasses and do not entitle the trespassers to any immunity from that equity jurisdiction.

Again, it should be noted that this statute of 1891 does not assume to confer upon the court power in equity to enjoin a person from committing mere criminal acts, not even such acts as unlawfully selling intoxicating liquors. Those are simple criminal acts to be dealt with by the courts under their criminal law procedure. However frequent and successive such acts, they are intermittent and each is a separate hurt. A nuisance, however, is one continuous, unintermittent hurt as long as it exists. . Under this statute the state seeks not to punish for past criminal acts, nor even to enjoin future distinct and separate criminal acts, but to stop the continuance of a present existing hurt. Granting that under our constitution the state cannot use proceedings in equity to enjoin mere criminal acts, we think the

state may use them to cause the discontinuance, and perhaps removal, of a hurtful condition.

But we are reminded that these petitioners have not suffered any injury to their own persons or property by the acts complained of and that this is not a civil action to afford them redress or protection in any of their own affairs. We are further reminded that this proceeding is against a common or public nuisance only, with no suggestion of any private injury done or threatened. It is argued that, while an individual may maintain a civil action at law or in equity to redress or prevent special damage done or threatened him by what is also a common nuisance or crime, the state cannot, for public protection only, maintain or authorize any other action or process than a criminal prosecution either by indictment or information,—that "the law of the land" named in Art. 6 of the Bill of Rights necessarily implies such a restriction upon the powers of the government in such cases. To this we respond that, so far as at present advised, it appears to us that all the powers of a court whether at common law or in chancery may be called into action by the legislature in behalf of the whole people for the purpose of suppressing and preventing the continuance of common nuisances hurtful to the whole people. We know of no express prohibition in the constitution of this State or of the United States against the allowance of remedies in equity to effectuate such a purpose. Given the duty of the state to protect its people from nuisances hurtful to their health, morals or peace, it would seem to follow that the state may use all the processes of law and all the powers of its courts to prevent the evil as well as to punish for it as a crime after its mischief has been suffered. *Eilenbecker* v. *Dist. Court of Plymouth Co.*, 134 U. S. 31, 40.

We do not find that the jurisdiction of courts of equity to restrain and enjoin common nuisances on public account only has ever been denied. The proper occasions for the exercise of this jurisdiction, and what rules should be applied, have often been questioned, but the existence of this jurisdiction has been conceded. The English author of Adams' Equity, writing, at page 210, of public as well as private nuisances, says that by reason of the often inefficiency of

the remedies at law to restrain or prevent nuisances "there is a jurisdiction in equity to enjoin, if the fact of the nuisance be admitted or established at law, whenever the nature of the injury is such that it cannot be adequately compensated in damages, or will occasion a constantly recurring grievance." He cites several English cases of injunction against public nuisances at the suit of the attorney general. In Story's Equity Vol. 2, § 921, it is laid down: "In regard to public nuisances the jurisdiction of a court of equity seems to be of very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth." In Pomroy's Eq. Juris. it is laid down in § 1349, that "a court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the attorney general in England, and at the suit of the state, or the people, or the municipality of some proper officer representing the commonwealth in this country." He also cites numerous English and American cases.

In *Pennsylvania* v. *The Wheeling Bridge Co.*, 13 How. 518, the supreme court of the United States, without special statutory authorization, sustained a bill in equity by and in the name of the state of Pennsylvania to enjoin the erection and continuance of what was claimed to be a public nuisance. In *District Attorney* v. *Lynn & Boston R. R. Co.*, 16 Gray, 242, the Massachusetts court decided that in that particular case there was no ground for the exercise of its equity jurisdiction, but was careful to say: "The authority of the attorney general, or other law officer empowered to represent the government, to file an information in equity to restrain and prevent a public nuisance seems to be well established in England, citing some English authorities." In the same case the court further said, "nor are we able to see that any serious objection exists to this method of reaching and restraining a public nuisance. By it a nuisance which is threatened or in progress can be arrested, which cannot be done by proceedings at law; an injunction is more complete in its operation, because it prevents future acts as well as restrains present nuisances; and it affords a more prompt and immediate relief than could be obtained by other process." A somewhat analogous proceeding for the prevention of crime is provided in

R. S., c. 130, under which a justice of a court, and even a trial justice may upon application summarily require a respondent to furnish sureties to keep the peace, and in default of such sureties being furnished may commit him to jail. If an appeal is taken the justice of the appellate court proceeds in the same summary way.

Convinced by these authorities and the intrinsic reason of the matter, we believe that this proceeding under the statute of 1891 above cited, to restrain and enjoin this hurtful common nuisance, is strictly according to "the law of the land," in the full sense in which that term is used in the Bill of Rights.

It is true, that proceedings in equity against public nuisances have been and are usually in the name of the state itself or its attorney general, but we do not find that the state is limited by the constitution to such a form of suit. It may authorize a suit in its own name, or in the name of any officer, or municipality or other agency. Its power to authorize penal actions by and in the name of an individual for violations of law has often been exercised, and never denied. If the state has the duty to protect its people by efficient legal and equitable remedies, it certainly has the power to permit any of them to protect themselves by pursuing such remedies in their own name. At any rate, we find no constitutional inhibition of such a course.

II.  The respondents further contend that this statute breaks against their immunities under the Bill of Rights, in that it does not provide for a jury trial, though directly affecting their use of their property. It is not necessary that a statute conferring upon the court jurisdiction at law or in equity, affecting personal rights or property, should in terms provide for a jury trial. The constitution is always the fundamental law and is read into every statute. Whatever right to a jury trial is given by the constitution exists under every statute, and will be fully accorded by the court whatever the language of the statute. Any statute denying such right whether in terms or by implication will be so far refused judicial cognizance.

In this case the record does not show that the respondents ever

have been or will be denied a jury trial. It does not show they ever requested a jury trial. In equity proceedings, at least, where the court usually proceeds without a jury, a party should ask for a jury trial, if he desires it, and the chancery rules point out how and when the request may be made. In this case the respondents voluntarily let the case take the usual course of a case in equity, and voluntarily submitted the issues of fact to the court in the usual way without asking for a jury. So far, therefore, they cannot correctly say they have been denied any constitutional right to a jury trial. The question whether they are entitled under the constitution to a jury trial at any step in this proceeding is not yet presented and so of course need not be decided. Interesting and exhaustive discussions of the question may be found in the following cases. *Carleton* v. *Rugg*, 149 Mass. 550; *State* v. *Saunders*, 66 N. H. 39; *Eilenbecker* v. *Plymouth Co.*, 134 U. S. 31; *Littleton* v. *Fritz*, 65 Iowa, 488.

III. The respondents further contend that this statute of 1891 is only amendatory of R. S., c. 17, relative to nuisances, and is therefore limited in its operation by the other provisions of that chapter. They still further contend that whatever equity jurisdiction is thus conferred is to be exercised under the recognized limitations of equity procedure in nuisance cases. The inference drawn is that the fact of an existing or threatened nuisance must first be established in an action at law or in a criminal proceeding, before the court will issue the extraordinary writ of injunction,—that being the course indicated in R. S., c. 17, and followed in equity proceedings against nuisances. If the statute of 1891 is thus limited in its operation, it is superfluous. It adds nothing to the powers of the court or the government. Already, under R. S., c. 17, the court had the power to abate the nuisance after verdict, and also by injunction to stay or prevent the nuisance before verdict pending the prosecution. Without the statute of 1891, the court had the power under its general equity jurisdiction to restrain, enjoin and abate after a verdict at law. It could do so even without a verdict at law in clear cases. While this power was sparingly and

cautiously exercised at first, courts of equity never doubted their right to exercise this power in cases apparently requiring it.

The language of the statute of 1891 is explicit. There must have been a purpose. The legislature evidently intended to increase the power of the court in nuisance cases, or at least to facilitate the exercise of such power as it already possessed. The court is to have clear, indisputable jurisdiction in equity to restrain, enjoin or abate certain nuisances upon mere petition. No conditions or preliminaries are named. The court is authorized to exercise its amplest powers and procedure in the matter. It need not now await the result of an action or indictment at law before preventing the threatened nuisance. The construction contended for would make the statute nugatory, and hence cannot be admitted.

All the foregoing contentions of the respondents were raised, considered and overruled in an elaborate opinion by the supreme court of Iowa in *Littleton* v. *Fritz*, 65 Iowa, 488, 54 Am. Rep. 19. We have found no case holding this or similar statutes unconstitutional.

IV. If not sustained in any of the positions taken under this demurrer, the respondents urge, under their appeal, that the evidence did not justify the finding of the court and the order for the injunction. This is a question of fact in determining which we must give great weight to the opinion of the justice who heard and saw the parties and the witnesses. Appeals in equity upon questions of fact are not to be taken as matter of course, but only when the appellants feel they can demonstrate that the finding appealed from is clearly wrong. After careful study of the reported evidence we do not feel at all clear that the respondents were not keeping or maintaining a nuisance as alleged. The evidence was uncontradicted ; and there were several very suspicious circumstances, none of which were explained. The respondents refrained from placing themselves under cross-examination. We do not feel clear that the inference that they were keeping a nuisance was clearly wrong.

The respondents invoke the expressed policy of this court to be conservative in its use of so heavy and sharp a weapon as the writ

of injunction. The greater the danger of infringing in the least upon the smallest personal or property right, the greater should be the caution exercised by the court, and the more clear the proof demanded. Here, however, there is no such danger. It is not proposed to remove their property, or interfere in any way with its legitimate use. They have no right to use it for the unlawful sale or keeping of intoxicating liquors. They never had nor can they have any such right, nor do they claim any such right. The decree will not in the least abridge any personal or property right existing or claimed to exist. The prohibited use of their property is confessedly unlawful and one they admit they should voluntarily abandon. We cannot see any chance of legal harm in granting the injunction. There is absolutely no question that the enjoined use would be a common nuisance. The result is that the decree below must be affirmed with additional costs of this court, and it is,

<em>So ordered.</em>