## GRAUL *v.* UNITED STATES.

STATUTE; IMPLIED REPEAL; PRIVILEGE OF WITNESSES; CLAIM OF EXEMPTION; RELEVANCY OF EVIDENCE; CROSS-EXAMINATION: OBJECTION AND EXCEPTION; COMMENTING ON FAILURE TO TESTIFY; BRIEF; REFERENCES TO PAGES OF RECORD.

1. The Act of Congress of July 16, 1912 (37 Stat. at L. 192, chap. 235), for the punishment of maintaining bawdyhouses, is not repealed by implication by the subsequent Kenyon Act (38 Stat. at L. 280, chap. 16), providing a means in equity for abating such nuisances, as there is no inconsistency between them.

2. Permitting witnesses to testify against an accused person to matters which might tend to incriminate them, without being advised by the court of their immunity, does not constitute error against the accused, since a claim of privilege is personal and cannot be asserted by a third person.

3. Testimony of a taxicab driver against the keeper of a bawdyhouse, that he had an arrangement with the defendant by which he was to receive a certain percentage of the money spent by the men whom he carried to the house, is not inadmissible because he is unable to say whether this arrangement was entered into during the time the defendant occupied the house in question, or when she resided at another place some years before; since the material fact was the bringing of the men for the purpose revealed, and this

was not affected by the time at which the arrangement specified
was made.

4. Testimony of a witness should not be struck out because he was
unable to fix any date for the occurrence to which he testified,
where he testified to facts which tended to fix it and which placed
the transactions related within the time limited by the issue.

5. A question of a police officer on cross-examination, whether he had
seen evidence of bawdry while observing the house in question, is
inadmissible as calling for a conclusion on a trial for maintaining
a bawdyhouse.

6. Testimony of police officers that female inmates of the house were,
some three or four years before, prostitutes in a house of ill fame
conducted by the defendant in the red light district, is admissible
for the purpose of proving defendant's knowledge as to the char-
acter of the women whom she harbored and the nature of the busi-
ness in which they were engaged while inmates of her home.

7. An appellant cannot complain because witnesses on cross-examination
refuse to answer on the ground that it would tend to incriminate
them, where the court was not asked to require it, and no exception
was made. (Citing *Eaton* v. *Brown*, 20 App. D. C. 453, 459; *Dis-
trict of Columbia* v. *Dietrich*, 23 App. D. C. 577, 580; and *Lorenz*
v. *United States*, 24 App. D. C. 337, 391.)

8. A witness who did not claim any privilege on direct examination may,
nevertheless, claim it on a cross-examination which does not relate
to the subject of the examination in chief, but introduces new
matter.

9. Where counsel for the accused person, in his closing argument, said:
"At the time I made that opening statement I expected to introduce
evidence which would justify that statement, but I have reasons
I am not at liberty to give nor are you at liberty to consider;" and
thereupon counsel for the government interposed, saying, "I chal-
lenge you to state a decent reason why you did not do it before
this jury,"—this cannot be held misconduct on the ground that it
constituted a comment upon the defendant's failure to take the
stand, where the record is barren of anything even tending to show
that defendant would be a witness on the subject referred to by
her counsel.

10. Failure to comply with rule 8, requiring appellant's brief to give ref-
erences to the pages of the record, justifies the court in totally
disregarding the brief; and the fact that the court does not do so
is not to be taken as indicating that it will not follow that course
in the next case in which a like failure occurs.

No. 3129.   Submitted March 5, 1918.   Decided April 1, 1918.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in a criminal prosecution for maintaining a bawdyhouse.       *Affirmed.*

The facts are stated in the opinion.

*Mr. A. D. Smith* and *Mr. Matthew E. O'Brien* for the appellant.

*Mr. John E. Laskey,* United States Attorney, and *Mr. James B. Archer,* and *Mr. Bolitha J. Laws,* Assistants, for the appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The defendant, Allautia Graul, appellant here, was convicted in the supreme court of the District of maintaining a bawdyhouse in violation of an Act of Congress approved July 16, 1912 [37 Stat. at L. 192, chap. 235]. She assigns thirty-nine errors. Many of them cover the same ground.

It is said that the act of Congress under which defendant was prosecuted was repealed by implication by the Kenyon Act, passed nearly two years later [38 Stat. at L. 280, chap. 16]. The undoubted object of the latter act is to provide a means in equity for suppressing the so-called red light district and houses or establishments kept "for the purpose of lewdness, assignation, or prostitution." Its purpose is to abate a nuisance, not to punish the crime of maintaining it. The latter is to be taken care of under other statutes; for in sec. 5 it is said "that if the existence of the nuisance be established in an action as provided in this act, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case."

Speaking of an act of the State of Kansas which provided for the abatement of a nuisance, and also for the indictment and trial of the offender, the Supreme Court of the United States in *Mugler* v. *Kansas,* 123 U. S. 623, 671, 672, 31 L. ed. 205, 213, 214, 8 Sup. Ct. Rep. 273, said: "One is a proceeding against the property used for forbidden purposes, while the

other is for the punishment of the offender. * * * In case of public nuisances, properly so-called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction." See also *Littleton* v. *Fritz*. 65 Iowa, 488, 54 Am. Rep. 19, 22 N. W. 641; *State ex rel. Wilcox* v. *Gilbert*, 126 Minn. 95, 147 N. W. 953. The criminal action punishes for what has been done. The equity proceeding looks to future conduct. There is no inconsistency between the Kenyon Act and the statute under which the defendant was convicted.

Defendant cites a number of cases to the effect that where a new act covers the whole subject of a former one, or plainly shows that it was intended to be a substitute for the first act, or where there is a clear repugnancy between the earlier and the later statutes, they cannot subsist together. True, but that is not the case here, as we have just indicated.

Complaint is made because the court permitted witnesses to testify who could have avoided doing so if they claimed their constitutional privilege not to give testimony which would tend to incriminate them. The appellant insists that she had a right ot have the court advise the witnesses of their immunity, and that the court's failure to do so constituted error against her. It is the settled law that the privilege mentioned is personal. "The right of a person under the 5th Amendment," says the Supreme Court of the United States in *Hale* v. *Hankel*, 201 U. S. 43, 69, 50 L. ed. 652, 663, 26 Sup. Ct. Rep. 370, "to refuse to incriminate himself, is purely a personal privilege of the witness." The circuit court of appeals for the first circuit, considering the same subject, said: "But this privilege was not claimed by the witness on his own behalf, but claimed by counsel for the defendant on behalf of the defendant corporation. It is unnecessary to cite authority to sustain the proposition that such a claim of privilege cannot be asserted by a third person." *London* v. *Everett H. Dunbar Corp.* 103 C. C. A. 130, 179 Fed. 506, 510.

Appellant says that she was unduly restricted in the examination of a witness; that the government forced a witness to testify after he had declared, "If I would incriminate myself,

I would not care to;" and that the court erred in saying that "he would permit a witness to testify and on cross-examination permit the witness to claim privilege." With respect to the first, the record clearly shows that there was no restriction. As to the second, it is baseless. After the witness had made the statement quoted, he was instructed he could decline to answer any question "which might have a tendency to connect him with the crime." He was then interrogated in the usual way, and he answered without objection. There was no compulsion of any kind exercised, and he testified freely with full knowledge of his rights. Relative to the third, the witness did not claim his privilege on cross-examination, or refuse on that score to answer any question put to him by the defendant; hence defendant suffered nothing by reason of the court's remark.

One of the witnesses, a taxicab driver, testified that on several occasions he conveyed to the house of the defendant men who said to him that "they wanted to have a little fun," and that after taking the men there he was accustomed to call upon the defendant and receive from her "a tip now and then;" that when he did not get a tip "they might say that the party did not stay;" and that he had an arrangement with the defendant by which he was to receive a certain percentage of the money spent by the men whom he carried to the house. Asked upon cross-examination as to when this arrangement was entered into, he said he could not say whether it was during the time that the defendant resided at the house in question, or when she resided at another place some years before. Appellant now claims that this testimony should have been stricken out because it tended to prove a different crime from that for which she was on trial. The testimony that he brought men to the house under the circumstances disclosed was competent, and this was not affected by the fact, if such it was, that they were brought in pursuance to an arrangement made before she occupied the house in question. The material thing is the bringing of the men for the purpose revealed. Nor is it of any moment that the evidence also tended to prove the commission of another crime by the defendant, since it was competent to serve the object for which it was received. Underhill, Ev. p. 90.

A careful examination of the decisions cited by appellant upon this point fails to uncover anything which supports her contention. They hold that testimony offered for the sole purpose of proving that a defendant had committed other crimes, and having no bearing whatever upon the case on trial, would be improper. This may be conceded, but it has no relevancy, since, as we have made clear, those cases were quite different from the one with which we are dealing.

There is no merit in assignments 12 and 13. The first relates to the action of the court in refusing to strike out testimony of a witness because he was unable to fix "any date for the occurrence to which he testified." But he testified to facts which tended to fix it and which placed the transactions related within the time laid in the indictment. This was enough. As to the second, defendant asked a police officer on cross-examination whether he had seen any evidence of bawdry while he was observing defendant's house. This was objected to on the score that it called for a conclusion. The objection was sustained, and properly so. Later the same witness was permitted to say that, during the time he was watching the house, "nothing came under his observation to justify him in making an arrest, and he heard no disorder from the house." Thus defendant succeeded in putting before the jury the substance of what was called for by the rejected question.

Police officers were permitted to testify that female inmates of the defendant's house were, some three or four years before, prostitutes in a house of ill fame conducted by the defendant in the "red light district." This was allowed for the purpose of proving knowledge on the part of the defendant as to the character of the women whom she harbored and the nature of the business in which they were engaged while inmates of her house. It is argued that this was improper because, as stated, the only way by which the character of persons can be established is by interrogating witnesses who knew them in the neighborhood in which they resided at the time their character is in issue. Generally that is so, but not as applied to a case like the one before us. The question here is not character, but rather conduct,—the business in which the women were engaged

in the defendant's house. Knowledge upon her part that they were prostitutes some years before would impose upon her the duty of investigation as to whether or not they had changed their mode of living. If she had made such investigation in good faith she would have discovered that they had not. One of them testified in effect that she and two others had engaged in prostitution in the house here involved. Not only that, but also that the defendant knew it.

In *People* v. *Russell,* 110 Mich. 46, 67 N. W. 1099, the court said that "evidence relating to the reputation of one of the inmates [of a house of ill fame] covering as it did a period of some three years before the time charged," was not too remote. "Reputation," it said, "is not made in a day, and when once established may well be presumed to continue." See also *Cadwell* v. *State,* 17 Conn. 467; *Troutman* v. *State,* 49 N. J. L. 33, 6 Atl. 618; *Wimberly* v. *State,* 53 Tex. Crim. Rep. 11, 108 S. W. 384. We think no right of the defendant was violated by the admission of the testimony just referred to.

Two witnesses on cross-examination refused to answer questions on the stated ground that the answers, if given, would tend to incriminate them. Appellant complains because they were not compelled to answer. But in the one case she did not ask the court to require it; she took no exception to the witness's refusal, but apparently acquiesced in it. If she felt that she was entitled to have the interrogatory answered, she should have invoked a ruling of the court, and, if that was not satisfactory, saved an exception. Under these circumstances she cannot now be heard to find out. *Eaton* v. *Brown,* 20 App. D. C. 453, 459; *District of Columbia* v. *Dietrich,* 23 App. D. C. 577, 580; *Lorenz* v. *United States,* 24 App. D. C. 337, 391. With respect to the second witness, the question which he declined to answer was not proper cross-examination. He testified in chief that he had a room at the defendant's house; that he worked nights, coming home at 6 o'clock in the morning and leaving between 6 and 7 o'clock in the evening, and that he was in the house at the time when it was raided. This was all. On cross-examination he was asked if he had not lived with one of the women inmates in another part of the city,

but he declined to answer, claiming his privilege. Clearly the question did not relate to the subject of his examination in chief, and was not admissible as cross-examination. It is undoubtedly the rule that a witness may not waive his privilege of not testifying to incriminating matters in his examination in chief and then claim it on his cross-examination. *Roddy* v. *Finnegan,* 43 Md. 490; *Brown* v. *Walker,* 161 U. S. 591, 597, 40 L. ed. 819, 821, 5 Inters. Com. Rep. 369, 16 Sup. Ct. Rep. 644; *State* v. *K.* 4 N. H. 562; *Evans* v. *O'Connor,* 174 Mass. 287, 75 Am. St. Rep. 316, 54 N. E. 557. But the cross-examination must relate to the subject of the examination in chief. Unless it does—if it is new matter—he may claim his privilege and it must be allowed. *Georgia R. & Bkg. Co.* v. *Lybrend,* 99 Ga. 421, 27 S. E. 794; *Pilcher* v. *People,* 16 Mich. 142; *Razee* v. *State,* 73 Neb. 732, 103 N. W. 438. In addition, defendant failed to reserve any exception to the action of the court in advising the witness that he might claim his privilege at any time. A reviewing court in a criminal case may, and sometimes does, take notice of a plain error which operates prejudicially against the defendant, though no exception was taken in the court below; but this is unusual and is done only where justice imperatively demands it. *Holmgren* v. *United States,* 217 U. S. 509, 522, 54 L. ed. 861, 867, 30 Sup. Ct. Rep. 588. In the case at bar, as we have shown, this reason does not exist.

It is asserted with much vigor that the United States attorney was guilty of misconduct in the course of the trial. We find nothing in the record to support this claim. Counsel for the defendant in his closing argument used this language: "At the time I made that opening statement I expected to introduce evidence which would justify that statement, but I have reasons I am not at liberty to give nor are you at liberty to consider." Thereupon counsel for the government interposed: "I challenge you to state a decent reason why you did not do it before this jury." This, appellant says, was misconduct for which the case should be reversed. The gist of her argument, as we gather it, is that by this remark the government's counsel commented upon the failure of the defendant to take the stand;

but in fairness it is not susceptible to this inference. Defendant might have proved the matters referred to by witnesses other than the defendant. In fact, the record is barren of anything even tending to show that defendant would be a witness on the subject referred to by her counsel. Therefore the challenge did not call upon him to explain why she did not take the stand. A similar question arose in *Price* v. *United States,* 14 App. D. C. 391, 400, where the court said: "We do not understand that the counsel for the government, in what is stated to have been said by him, was referring to the failure of the accused to take the stand and testify in his own behalf. The accused was relying upon what he contended was the failure of the prosecution to show his presence at the Vatoldi café at the time of the robbery. * * * But his own testimony was not the only evidence by which he might have shown that he was at some other place than the Vatoldi café at the time of the theft. The party accused, by declining to become a witness for himself, does not thereby restrict the attorney for the government from making full comment upon all the facts and circumstances of the case, except only the failure of the accused to become a witness, from which no adverse inference is allowed to be drawn." See also *Frazier* v. *State,* 135 Ind. 38, 34 N. E. 817.

Apart from this, we are satisfied from an examination of the record that the remark of the government's counsel was entirely justified in view of what had been said by the defendant's counsel.

In his argument to the jury, government's counsel inadvertently used the name of the defendant, Mrs. Graul. Upon his attention having been called to it, he said at once: "I mean Mrs. Graul's mother; I am not talking about the defendant; I mean the old lady." The court then immediately said: "The jury will understand the remark to have been intended in that way. The defendant in this case has a right to stay off the witness stand, without having any inference drawn against her in any way, shape or manner." In the circumstances no prejudice could have resulted to the defendant.

Other errors are assigned; they are of a trivial character and wholly without merit.

Rule 8 of this court requires that the brief of the appellant shall give "references to the pages of the record;" yet there is not a single reference of that kind in appellant's brief. This failure would have justified us in totally disregarding the brief. That we did not do so is not to be taken as indicating that we will not follow that course in the next case in which a like failure occurs.

The judgment of the lower court is affirmed.     *Affirmed.*

A motion for re-argument was overruled April 19, 1918.